HANS JOHNSON *vs.* EVANDER SKILLMAN and another.

April 8, 1882.

**Easement—Right to maintain Pond.**—The right to maintain a pond or reservoir upon the land of another is an easement which can only be acquired by grant or prescription.

**License to be executed on Land of Licensor.**—A parol license to occupy or to do an act or series of acts upon the land of the licensor, being a mere power or authority founded in personal confidence, is not assignable; and, though a protection for acts done under it, is essentially revocable at the will of the licensor, unless coupled with a valid grant, or unless executed under such circumstances that a court of equity ought, in conformity with established principles, to interfere for the purposes of remedy.

**Same—Agreement held to amount to a mere License.**—Where the licensor verbally promised and agreed with the licensees "that if they would erect a good custom mill at a certain point, he would give them the privilege of flowing his land so long as they would maintain such mill," and they, relying upon said promise and agreement, and in part induced thereby, erected a dam and made large expenditures upon their own land adjoining, *held,* that said agreement amounted to a license only, and was revocable even after execution.

**Same—Licensee held not entitled to Equitable Relief.**—It is not a case for the interposition of equity, because (1) the terms of the agreement are too indefinite and uncertain as to the extent and character of the privilege; (2) it is not made to appear that the improvements were wholly induced by and referable to said agreement; and (3) there remains to the licensees or their grantees the statute remedy to secure a definite and permanent right of flowage.

This action was brought in the district court for Goodhue county, in 1880, to compel the defendants to remove a certain mill-dam situate on their own lands, or so much thereof as should be necessary to prevent the flowing of plaintiff's lands. The defendants claimed that under an agreement with one Haynes, the plaintiff's grantor, they had the right to maintain the dam so long as the flouring mill connected with it should be kept and operated as a custom mill.

The action was tried before *Crosby,* J., who found the facts in reference to the alleged agreement as follows: In 1873, the defendant E.

Skillman and one Milon Skillman (the grantor of the other defendant) were owners in fee and in possession of the lands on which the dam is situate, and contemplated building thereon a custom flouring mill, and building a dam in connection with and for the purpose of operating the mill. One Wm. H. Haynes, who then owned the lands now belonging to plaintiff, "stated to said Skillmans that the erection of a custom flouring mill, at the point contemplated by them, would enhance the value of his said lands, (being the same now owned by plaintiff,) and verbally promised and agreed with them that, if they would erect a good custom mill at the point aforesaid, he would give them the privilege of flowing his said lands so long as they would maintain said mill. Relying upon said promise and agreement, and in part induced thereby, the said E. and M. Skillman proceeded to construct said dam and to erect a good custom flouring mill, at an expense of about $7,000, and have ever since maintained the same at the point named in the answer. Said promise and agreement was made before said dam or mill was constructed." The building of the mill and dam was begun in 1873, and completed, and the mill in operation, in 1874, Haynes having at all times full knowledge of the work as it progressed, and of the flowing of his premises with water by the construction and maintenance of the dam. No more of the premises of plaintiff are now flowed than when the dam and mill were first built, and while Haynes was owner.

Plaintiff purchased his premises of Haynes on June 21, 1876, "and, at the time of said purchase, had full and actual notice and knowledge of the flowing of said premises by the action of defendants' dam, and of the aforesaid agreement made by and between said Haynes and said E. and M. Skillman."

The court also found "that in case said dam should be lowered so that the water thereon would not flow back upon plaintiff's land, it would render defendants' mill property of little or no value." Judgment was ordered for plaintiff as prayed in the complaint, "unless the defendants, within sixty days from the time their attorneys are given notice of this decision, institute proceedings under the laws of this state to procure the right to flow plaintiff's said land, and promptly prosecute the same." The defendants not complying with the condi-

tion, judgment absolute was entered against them, from which this appeal is taken.

*Wilson & Skillman*, for appellants.

*W. C. Williston*, for respondent.

VANDERBURGH, J.   The parol agreement set forth in the decision of the trial court created no easement in the land of plaintiff, but took effect as a parol license only.   A license creates no estate in lands. It is a mere power or authority, founded on personal confidence, not assignable, and revocable at pleasure, unless subsidiary to a valid grant, to the beneficial enjoyment of which its exercise is necessary, or unless executed under such circumstances as to warrant the interposition of equity.   This **is** the result of the best-considered cases. The doctrine of the early cases, which converted an executed license into an easement, is now generally discarded as being "in the teeth of the statute of frauds."   And, referring to these decisions, Mr. Chitty says, concisely: "However a court of equity might, under strong circumstances, interfere against such a party by injunction and decree a conveyance, it is clear that such a doctrine at law is not tenable."   1 Chitty, Gen. Pr. 339.

The cases of *Ricker* v. *Kelly*, 1 Me. 117, and *Clement* v. *Durgin*, 5 Me. 9, cited by defendants' counsel, have now little following, and the case of *Rerick* v. *Kern*, 14 Serg. & Rawle, 267, also relied on, which was an action at law for damages in favor of the licensee, is followed in but few states.   *Houghtaling* v. *Houghtaling*, 5 Barb. 383; *Jamieson* v. *Millemann*, 3 Duer, 255; Washburn on Easements, 24.

A simple reference to some of the more important cases, in support of the views herein expressed, will suffice.   *Cook* v. *Stearns*, 11 Mass. 533; *Mumford* v. *Whitney*, 15 Wend. 380; *Wolfe* v. *Frost*, 4 Sandf. Ch. 72; *Foot* v. *New Haven & Northampton Co.*, 23 Conn. 214; *Bridges* v. *Purcell*, 1 Dev. & Bat. (N. C.) 492; *Hazelton* v. *Putnam*, 3 Pin. (Wis.) 107; *Woodward* v. *Seely*, 11 Ill. 157; *Wood* v. *Leadbitter*, 13 M. & W. 838; *Wiseman* v. *Lucksinger*, 84 N. Y. 31.   In cases where the license is connected with a valid grant, as of chattels or fixtures, upon the land of the licensor, susceptible of being removed, it is subsidiary to the right of property, and irrevocable to the extent necessary to protect the licensee, and saves to him the right of entry

—the right of possession following the right of property. *Nettleton* v. *Sikes*, 8 Met. 34; *Heath* v. *Randall*, 4 Cush. 195; *Wood* v. *Leadbitter, supra.* But where it is sought to couple with a license a parol grant of an interest in the realty, the attempted grant being void, the transaction remains a mere license. *Wood* v. *Leadbitter, supra.* A license is, of course, always a protection for acts done under it, and before revocation. *Pierrepont* v. *Barnard*, 6 N. Y. 279. In cases, however, of what are sometimes called negative easements, which are executed on the land of the licensee, a different rule prevails; as, where a man has an easement of light and air upon or over an adjacent lot, he may abandon the same, and license the erection, by his neighbor, of a building which shall extinguish such right, and the license become irrevocable. *Morse* v. *Copeland*, 2 Gray, 302; Goddard on Easements, 472.

Nor is it material that a mere license is or is not in writing, or upon a consideration. In *Jackson* v. *Babcock*, 4 John. 418, there was a sealed instrument, and in *Wiseman* v. *Lucksinger*, 84 N. Y. 31, there was both a writing and a consideration; but both were held licenses, and revocable. In such cases the question is one of interpretation as to the intent of the parties as evidenced by the writing, and, as Chancellor Kent remarks, the distinction between an easement and a license is sometimes quite subtle. And so, in a suit in equity brought to confirm rights and assure an interest, as upon a part-performance of a parol agreement alleged to be taken out of the statute of frauds, (and otherwise void as a grant, but valid as a license,) the question of interpretation of the terms of the agreement, and the intent of the parties, becomes a material one in the case. *Jackson & Sharp Co.* v. *Philadelphia, etc., R. Co.*, 11 Am. Law Reg. (N. S.) 374.

In the case before us the license has been revoked by the change in the title, with notice, however, to the grantee sufficient to bind him as to defendants' equities. As to equitable relief the affirmative is devolved upon the defendants to establish their right to it as claimed in the answer. The grounds upon which this is administered, whether it be for specific performance or be based upon estoppel for the prevention of fraud, are not exceptional or special to such cases as this, but the facts and circumstances must be such as to bring each case

within established principles. *Jackson & Sharp Co.* v. *Philadelphia, etc., R. Co., supra,* 381–2.

The form of the alleged agreement, as found by the court, is that plaintiff's grantor verbally promised and agreed with defendants "that if they would erect a good custom mill" at a certain point, "he would give them the privilege of flowing his land so long as they would maintain such mill." Such an agreement might very properly be construed as intending to give an interest in the land, commensurate with a permanent right of occupancy thereof for mill purposes, and so be made the subject of equitable relief, on the basis of part-performance, had its terms been more definite. There may be specific performance in such cases, upon a proper showing, though the improvements and expenditures are entirely on the land of the licensee, and there be no other possession than that incident to the enjoyment of the privilege. Brown on Stat. of Frauds, § 466; Story, Eq. Jur. § 759. Such a remedy is not, however, available here for several reasons.

In *Hazelton* v. *Putnam,* 3 Pin. (Wis.) 107, the court refused this relief, on the ground that the terms of the agreement were not clearly and definitely established. So, here, the terms of the agreement are altogether too general and indefinite. Neither the height of the dam nor extent of flowage allowed appear. In the *second* place, the court finds "that the defendants, relying on said agreement, and in part induced thereby," erected, on their own land adjoining, a dam and mill at great cost. In the absence of any supporting evidence, we are left to infer that they were also influenced by other considerations in the matter. The rule is quite strict that the alleged part-performance must be founded on and be referable solely to the agreement. *Wheeler* v. *Reynolds,* 66 N. Y. 227; *Wolf* v. *Frost,* 4 Sandf. Ch. 72. *Thirdly,* there is left to the parties their statutory remedy to secure the right of flowage. There is nothing in the case to show that this remedy is not an adequate one, and just to both parties. In such a case equity will not interfere. In *Wiseman* v. *Lucksinger,* 84 N. Y. 31, the court lay stress upon the fact (in refusing equitable aid) that the plaintiff might reasonably secure drainage for his lot in another

direction than the one in controversy, though attended with more expense and labor; and in *Meynell* v. *Surtees*, 3 Smale & G. 101, a case in point, the court denied relief on the ground that while proceedings were pending in court to enforce an agreement for the possession of land, the right to secure the privilege under an act of parliament had been obtained. See, also, *Bankart* v. *Tennant*, L. R. 10 Eq. 141.

Judgment affirmed.