THE ST. LOUIS NATIONAL STOCK YARDS

*v.*

THE WIGGINS FERRY COMPANY.

*Filed at Mt. Vernon September 27, 1884—Rehearing denied May Term, 1885.*

1. FORMER ADJUDICATION—*whether conclusive upon question involved.* In an action of forcible detainer by the owner of land over which was constructed a connecting railroad track, to recover possession of the ground upon which the track was constructed, the court found that the track was built under a mere verbal license from the owner, and not under a contract with him, and this judgment was affirmed by the Appellate Court and by this court: *Held*, on bill to enjoin proceedings under the judgment, and for a specific performance of an alleged contract to grant the right of way, that such judgment was conclusive upon the parties that there was no contract, but only a mere license.

2. STATUTE OF FRAUDS—*part performance under verbal contract to convey right of way.* If a party verbally contracts with a land owner for the right to construct a railroad over the land, and is permitted to enter upon the

same, and expends money in building the track, in good faith, on the owner's verbal promise to convey, and such party otherwise performs or offers to perform his part of the agreement, such performance or partial performance will, as in other cases, take the case out of the Statute of Frauds, and a court of equity will decree a specific performance of the agreement.

3. SAME—*in case of a mere license by parol.* But a mere parol license to construct a railway track over the land of another is within the Statute of Frauds, and a claim of right under such license can not be enforced in equity, even after the expenditure of a large sum of money in constructing the road and' track, made on the faith of it. Such a license, if perpetual, would be to create an interest in the land, which can not be granted by parol.

4. ESTOPPEL—*to revoke a license by parol—after the expenditure of money on the faith of it.* Where a party, under a mere verbal license from the owner, enters upon the land of another and constructs a railway track over the same without objection on the part of the land owner, but without any agreement for compensation or as to the duration of the easement, and no guaranty is asked or given as to the length of time the right of way shall be enjoyed or any agreement not to remove the same, the land owner will not be estopped, in equity, from revoking such license, even after the expenditure of money in constructing the road. In such case the licensee can not claim that he has been misled or deceived by the licenser, as he must have known that such a license was revocable.

5. SPECIFIC PERFORMANCE—*must be of a contract.* Specific performance, as an equitable remedy, is based upon the existence of a contract between the parties to the suit, or between those through whom they claim; and when it was settled by a prior action at law that no such contract or promise was ever made, and that the acts done and claimed as in performance, were under a mere parol license, no specific performance can be decreed.

APPEAL from the Appellate Court for the Fourth District ;— heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. AMOS WATTS, Judge, presiding.

The bill of complaint exhibited in this case by the St. Louis National Stock Yards, in the circuit court of St. Clair county, on February 10, 1882, sets out that the complainant, being the owner of United States survey No. 627, containing four hundred acres of land adjacent to East St. Louis, upon which tract its stock yards were situated, was desirous of having a connecting railway track as near as might be to the East St. Louis stations of divers railroads ; that the Wiggins Ferry

Company, being the owner of land between said survey 627 and said railroads, on or about May, 1875, offered to give complainant, for the purpose of a right of way for said contemplated connecting track, a strip of land sixty feet wide, (part of said ferry company's land,) extending from complainant's survey 627 to the main track of the Wabash railway, on the condition that complainant would locate and construct the track upon the ferry company's land north of Stock Yard avenue, an improved highway leading from the stock yards to Front street, on the Mississippi river, at East St. Louis, and so as to enable the ferry company to lay out the land between Stock Yard avenue and the proposed track, into lots, of sufficient depth for manufacturing purposes, and to permit holders of lots abutting the track to connect therewith; that complainant accepted the proposal so made, and thereupon, in pursuance of the agreement, laid out a sixty feet right of way upon and across the ferry company's land, in July, 1875, and within sixty days thereafter, with the knowledge and consent of such company, constructed said projected connecting track on said right of way; that the entire length of the connecting track was three thousand one hundred and fifty feet, permanently built, at a cost to complainant of $12,000,—one thousand seven hundred and fifty feet of it being upon this right of way, the other one thousand four hundred feet being upon complainant's survey 627, and including a permanent bridge built across Cahokia creek; that the part of the track upon survey 627, including the bridge, cost $7000 out of the total of $12,000, and would not have been built, and was and is of no use to complainant without the other one thousand seven hundred and fifty feet, each being a necessary part of the entire connecting track; that ever since the completion of the track, in the fall of 1875, it was, with the knowledge and acquiescence of the ferry company, maintained and operated by complainant, for more than five consecutive years; that in 1876 complainant applied to the ferry company for a deed

of said right of way, and the latter promised to make it as soon as it could have a survey made of the sixty feet wide strip, and thereafter, on a subsequent application, refused to make a deed; that on April 17, 1881, the ferry company commenced suit in an action of forcible detainer, against complainant, to recover possession of the middle twenty feet of said sixty feet wide right of way, one thousand seven hundred and fifty feet in length, containing said connecting track, and on June 1, 1881, the ferry company made a lease for ten years for said middle twenty feet, for $250 per annum, to the East St. Louis Connecting Railway Company; that thereafter the ferry company recovered judgment in the forcible detainer suit, which judgment was affirmed by the Appellate and Supreme courts, whereupon, on January 30, 1882, a writ of restitution was issued. The bill prays that the ferry company may be enjoined in the premises, that it be required to make a conveyance of the right of way to complainant, and that the lease to the connecting railway company be cancelled. The circuit court, on the hearing, denied the relief prayed for, and ordered the bill to be dismissed. On appeal to the Appellate Court for the Fourth District, the decree was affirmed, and complainant appealed to this court.

Mr. JOHN B. BOWMAN, Mr. A. S. WILDERMAN, and Mr. R. F. WINGATE, for the appellant:

The forcible detainer suit in 102 Ill. 514, was an action at law, and did not put in issue any of complainant's equities. Those equities were not and could not be adjudicated. *Wilburn* v. *Haines*, 53 Ill. 207.

That there was a contract between the parties as to the right of way, enforcible in equity, appears from the following cases: *Bohanan* v. *Bohanan*, 96 Ill. 591; *Kurtz* v. *Hibner*, 55 id. 514; *Bright* v. *Bright*, 41 id. 97; *Langston* v. *Bates*, 84 id. 524; *Borders* v. *Murphy*, 78 id. 81; *Coles* v. *Pilkinton*, L. R. 19 Eq. 174; 11 Eng. (Moak's ed.) 768.

A representation made by one party, for the purpose of influencing the conduct of the other party, and acted on by him, will, in general, be sufficient to entitle him to the assistance of a court of equity. *Coles v. Pilkinton*, L. R. 19 Eq. 174; *Loffus v. Maw*, 3 Giff. 603; *Hammersley v. DeBill*, 12 C. & F. 62; Pomeroy on Contracts, sec. 126, and notes; *Williams v. Evans*, L. R. 19 Eq. 574.

The expressing of the terms of a contract inartificially will not prevent its enforcement, if the intention is apparent from the whole instrument. *Bull v. Bell*, 4 Wis. 54.

When the agreement leaves the precise location of the land in doubt, but the parties themselves have located it by giving and receiving possession, the location becomes definite. *Parkhurst v. Van Courtland*, 14 Johns. 15.

A right of way, whether by condemnation or grant, continues during user, by legal implication. Goddard on Easements, 451.

If there be a grant by a land owner to a railroad, for the purpose of its right of way, or where the land had been taken for such a purpose by the exercise of the right of eminent domain, prior to the adoption of the present constitution, it would seem to convey to the railroad company the fee; but that fee would be a base or qualified fee, just like the fee of a street of a city. It would be determinable upon the cessation of its use for the purposes of the grant or condemnation. *Ferry Co. v. Railway Co.* 94 Ill. 83; Pierce on Railroads, 130, 157; *Norton v. Railway Co.* 9 Ch. Div. 623; S. C. 26, Eng. (Moak's ed.) 394.

A license is irrevocable if the licensee, acting on the permission granted, has executed a work of a permanent character, and has incurred expense in its execution. Goddard on Easements, 471; *Russell v. Hubbard*, 59 Ill. 335; *Balinseifer v. Forbes*, 74 Ill. 183; *Vegte v. Water Power Co.* 4 C. E. Greene, 153; *Wood v. Leadbitter*, 15 M. & W. 838; *Swartz v. Swartz*, 19 Ind. 447; Morawetz on Private Corp. sec. 82;

*Railroad Co.* v. *Thornton*, 103 Ill. 187; Bigelow on Estoppel, 505; 2 Pomeroy's Eq. Jur. sec. 802.

There was such possession and performance of the contract as to take the case out of the Statute of Frauds. *Wheeler* v. *Frankenthal*, 78 Ill. 127; *Smith* v. *Yocum*, 110 id. 145; *Weaver* v. *Poyer*, 79 id. 417; Browne on Frauds, sec. 448; *Caldwell* v. *Carrington's Heirs*, 9 Pet. 103; *Williams* v. *Morris*, 95 U. S. 457.

Mr. CHARLES W. THOMAS, for the appellee:

Under the pleadings in this case, one of two things, only, can be done: Either the specific performance of a contract to convey must be decreed, or the Wiggins Ferry Company must be perpetually enjoined from dispossessing appellant, on the ground that such an act would be the fraudulent revocation of a license.

There can be no specific performance of a contract to convey, because it has been adjudicated that the supposed contract to convey was a mere license. It is only contracts that courts of equity will specifically enforce. A parol promise to convey, where the promisee takes possession and makes valuable improvements, and performs or offers to perform, may be enforced. Such are the cases cited by appellant, of *Kurtz* v. *Hibner*, 55 Ill. 514, *Bright* v. *Bright*, 41 id. 87, *Smith* v. *Yocum*, 110 id. 142, and *Bohanan* v. *Bohanan*, 96 id. 591.

While a court of equity may restrain the exercise of a legal right when inequitable and against conscience, it will not, as a general thing, enforce affirmative promises which were never made. *Weaver* v. *Poyer*, 79 Ill. 417.

A court of equity will not, by injunction, place a party in possession of land from which he has already been ousted. *Wangelin* v. *Goe*, 50 Ill. 459.

The writer has been unable to find a case where a mere licensee was, after a revocation, afforded any affirmative relief

in the shape of a conveyance. In the following cases, cited by Bingham in his work on the Sale of Real Property, (chap. 111, sec. 1,) no attempt at affirmative relief is disclosed: *Yeakle* v. *Jacobs*, 33 Pa. St. 376; *Cook* v. *Stearns*, 11 Mass. 533; *Mumford* v. *Whitney*, 15 Wend. 380; *Otis* v. *Hall*, 3 Johns. 450; *Chandler* v. *Duane*, 10 Wend. 563; *Stevens* v. *Stevens*, 11 Metc. 251; *Foot* v. *Railroad Co.* 23 Conn. 214; *Selden* v. *Canal Co.* 29 N. Y. 633; *Hewlins* v. *Shippam*, 5 B. & C. 232; *Pierrepont* v. *Barnard*, 6 N. Y. 679; *Miller* v. *Railroad Co.* 6 Hill, 61; *Moulton* v. *Faught*, 4 Me. 298; *Woodward* v. *Seely*, 11 Ill. 157.

A parol license to operate a line of railroad over the land of another, is within the Statute of Frauds. Browne on the Statute of Frauds, secs. 28, 29, 30; *Benedict* v. *Benedict*, 5 Day, 464.

There can be no estoppel here, for the reason there has been no fraud or deception practiced. Appellant has not in any manner been misled or fraudulently induced to build a road over the lands of the ferry company by any promise of any future conveyance.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The arrangement under which the embankment and railroad track in question were constructed, was made with S. C. Clubb, the superintendent of the Wiggins Ferry Company. Question is made as to what was the character of that arrangement, it being contended on the side of the appellant that it was a contract of sale of the right of way. But that we do not regard as now an open question, under the decision of this court in the action of forcible detainer referred to in the bill which was brought by the ferry company, against the appellant, wherein it recovered judgment for the possession of this railroad track, and which came before this court on appeal from the Appellate Court for the Fourth District.

(See *St. Louis National Stock Yards* v. *Wiggins Ferry Co.* 102 Ill. 514.) We there held that it was a controverted question of fact, in the case before the Appellate Court, whether such agreement was a contract of sale of the right of way, or but a mere license, and that it must be taken that that court had determined it to be a license, which was a finding of fact that was conclusive upon the Supreme Court, and leaving as the only question for its decision, whether the ferry company was estopped from revoking the license, and if so, whether the estoppel could be made available in the action at law. Only the latter branch of the question was decided,—that such an estoppel could not be availed of in an action at law, but only in a suit in equity,—and the judgment was affirmed, without in any way passing upon whether there was such an estoppel in this case or not. We must take it, then, as an adjudicated fact not liable to be controverted again, that there was here but a mere license to construct this railroad track, and the question presented for determination is, whether, under the circumstances of this case, after the execution of the license by the construction of the railway track at a considerable expenditure of money, the ferry company is estopped from revoking the license.

The proofs show that the railway track in question was constructed in pursuance of an arrangement made with S. C. Clubb, the superintendent of the Wiggins Ferry Company, in the manner and at the cost as stated in the bill; that Clubb had no authority to execute any agreement or writing pertaining to the ferry company's real estate, but in all cases where there were deeds or leases to be executed, they were executed by the president and secretary of the company, under its seal; that appellant first made survey of a line for the track, which was not satisfactory to Clubb, and at his instance the line was changed to meet his approval, and so as to run about two hundred and fifty feet north of and parallel with Stock Yard avenue. The track was built upon an embankment,

which at first was made only three feet high, but the next year or the year after was raised three feet higher, because of danger from overflow. The track was first laid with iron rails, and was afterward relaid with steel rails. The track was put down as a permanent track, and well built, with a permanent bridge across Cahokia creek. On May 6, 1875, prior to the making of this arrangement with Clubb, he signed, as superintendent, a writing giving authority to appellant to construct a sewer from its stock yards, across the land of the Wiggins Ferry Company, to the Mississippi river. On May 24, 1878, the Wiggins Ferry Company, by its deed, executed in its behalf by S. C. Clubb, its president, under its corporate seal, and attested by its secretary, conveyed to the Wabash railway company a strip of land one foot wide, in bounding which it was described as extending from the south line of the town of Brooklyn, southwardly, "to a line thirty feet northwardly from and parallel to the center line of a railroad track, defined on the plat hereto attached as stock yard company's track to stock yards." That named track is the connecting track located on the land in dispute.

It appears that at the time of the giving of the license by Clubb, (June 19, 1875,) appellant was in negotiation with the Connecticut Land Company, which owned United States survey 626, for a right of way sixty feet wide over that survey, south of Stock Yard avenue, which negotiation had proceeded to the setting of a price by the company upon the land, which appellant was considering, and the connections at the other end, and that survey 626 was all sold to railroad companies other than named in the bill, prior to 1880, and subsequent to June 19, 1875.

The evidence on the part of appellant tends to show that in giving the license there was in view the benefit of the connecting track to the ferry company in having lots of two hundred and fifty feet in depth running back from Stock Yard avenue to the track, which might be valuable for manufac-

turing purposes.  The embankment and connecting railway track were constructed, at considerable cost, upon the faith of the license from Clubb, and although he was without authority to dispose of the ferry company's lands, it must be taken, under the proofs, that the track was constructed and operated with the knowledge and acquiescence of the company, and there is evidence tending to show that anticipated benefit to the ferry company's land, from having lots to abut on the connecting track, somewhat entered into the consideration for giving the license.  The circumstances might well, under the decisions of some courts, constitute an estoppel *in pais* against the revocation of the license, on the ground that to revoke it would be a fraud, after such an expenditure of money upon the faith of the license, and there would be compelled specific performance, by deed of the right of user, as of a contract in part executed.  But there was a contrary rule established in this State in the case of *Woodward* v. *Seely*, 11 Ill. 157, where it was decided that a license coupled with an interest in land must be in writing; that a license perpetually to overflow one's land would create an interest in the land, and the license could not be granted by parol; that a court of equity would not enforce a parol license to overflow the lands of the licenser, even in favor of a party who had acted in good faith upon the parol license, and made valuable improvements upon his own land, which would become worthless if the license was revoked.  That was the case where an upper proprietor had induced another party to purchase a water privilege immediately below, and improve it by the erection of a mill, at a cost of some $5000, upon a parol promise that he might overflow the land of the upper proprietor.  After the purchase of the land and erection of the mill below, the licenser revoked the parol license, and he was sustained, in equity, in so doing, although the lower mill was worthless without the privilege of overflow.  It was admitted there was a conflict in the authorities, and after a

review of them to quite an extent, the court arrived at the decision it did, as upon principle. It was there said: "It makes no difference that the complainants may have acted upon the parol license, and erected valuable buildings, which will become worthless in case the license is revoked,—before acting so imprudently they should have acquired permission by deed to overflow the land of the defendants. Nor can the complainants call upon a court of equity to enforce the license upon the ground that they have made valuable improvements, and expended their money, relying in good faith upon it." It was thought not to be like the case of a parol purchase of land, where, upon part performance, a court of equity will depart from the Statute of Frauds, and compel the vendor who has received the purchase money to make a title to the land; that to enforce the license there, would be a still further departure from the statute, by extending a doctrine originally of doubtful propriety.

*Russell* v. *Hubbard*, 59 Ill. 335, where an owner had given verbal permission to use the brick wall of his house for the purpose of attaching thereto a new brick building to be erected on the line of an adjacent lot, and the new house was built of brick and attached to the wall of the other, as permitted, and it was held the party giving the license was estopped from its revocation by reason of its being executed, seems somewhat at variance with *Woodward* v. *Seely*, but does not profess to overrule or question it. In *Kamphouse* v. *Gaffner*, 73 Ill. 453, we said *Russell* v. *Hubbard* must either be limited to cases of party walls, or be considered as overruled; and in *Forbes* v. *Balenseifer*, 74 Ill. 183, it is rather intimated that *Russell* v. *Hubbard* is to be limited to the particular facts of that case. *Woodward* v. *Seely* has never been overruled or directly questioned by this court, that we are aware of, and we think it must govern this case. It has stood so long as the rule in this State that we are disposed to adhere to it, without entering upon consideration of whether or not it

might be the proper one to adopt were the question now an original one before this court.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Walker, Dickey and Craig, JJ., dissenting.

· Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Mr. Justice Mulkey: After a very careful reconsideration of this case a majority of the court adhere to the conclusion reached upon the former hearing, as expressed in the opinion already filed in it.

The case of *Woodward* v. *Seely*, 11 Ill. 157, can not be distinguished from the present one, and the authority of that case, standing, as it does, in line with the decided weight of authority, has been too long recognized by this court as a correct exposition of the law upon the question involved, to be now overruled without any special reason for doing so. A contrary conclusion can not be placed upon any grounds, however plausible, which are not fully met by the *Woodward-Seely case*, and many others adopting the same view of the law. Moreover, the conclusion reached is in harmony with other well settled principles of law. The contrary view is not. The right to build a railroad track and operate it upon the land of another is an interest in land which can only pass by grant, and an agreement to convey such a right, if not in writing, is clearly within the Statute of Frauds. If, however, a party, verbally contracting for such right, enters upon the land and expends money in building the track, upon the faith of the owner's verbal promise to convey, and he otherwise performs or offers to perform his part of the agreement, such performance or partial performance will, as in other cases, take the case out of the statute, and a court of equity will decree a specific performance of the agreement;

but in this case we start out with the proposition conceded there was neither a conveyance nor a promise to convey. Specific performance, as an equitable remedy, by its very terms presupposes the existence of a contract between the parties to the controversy, or between those through whom they claim, for it were absurd to talk of the specific performance of an agreement that has no existence. In the case before us it has been solemnly adjudicated that the railroad track in question was not constructed under any contract, promise or agreement on the part of the Wiggins Ferry Company to convey the right of way to the appellant, and that in building the track the latter was acting under a mere license. It follows, therefore, that so much of appellant's argument as is based upon the assumption there was such an agreement, is not warranted by the record, and as this assumption has no foundation in fact, the argument based upon it must necessarily fail.

The only material question in this suit not settled by the former case between the parties, (reported in 102 Ill. 514,) is, whether conceding, as we must, appellant entered appellee's premises and built the track in question under a mere parol license from the Wiggins Ferry Company, the latter has at any time been guilty of such conduct as to estop it from asserting its right to the possession of the land upon which the track is built. If any such estoppel exists, it is what is known as an estoppel *in pais*, and consists in appellee having said or done something whereby appellant has been misled to its injury if the license is revoked. Now, it is clear that outside of the fact of revoking the license there is no ground for the claim that appellant has in any way been deceived or misled by appellee. Permission was given to build the track at the place it was built, and it was probably built about as both parties supposed it would be. No deception was practiced, so far as we can perceive, by either of the parties, and none has been suggested. It was a plain, common

business transaction. No compensation on the one hand was asked for the right of way, nor was any guaranty asked on the other side as to the length of time this right of way should be enjoyed. Probably both parties supposed the operation of the road would be mutually beneficial, and that that would be ample security against appellee revoking the license on the one hand, and against appellant removing its track on the other. If appellant saw proper, as it did, to enter upon appellee's land and spend money in constructing its track, upon a mere parol license, which, as matter law, it is conclusively presumed to have known was revocable at the pleasure of appellee, it was its own folly. The case in this respect does not differ in principle from any other where the licensee has expended money in connection with his entry upon land of the licenser. Indeed, this most generally occurs. Suppose, under the circumstances, appellant had concluded it was to its interest to take up the track altogether, it unquestionably would have had the right to do so, however much appellee may have been injured in consequence of it. On principle it would seem there ought to be some mutuality in this respect. The only thing about which appellant can have the slightest pretence for the charge that it has been misled to its injury, is the bare fact that appellee has exercised the right of revocation, when it was, perhaps, thought it never would. It is hardly accurate, under the circumstances, to say appellant was misled, for unless the mere grant of the license to build the track was an implied undertaking to never exercise the right of revocation, appellant was not warranted in assuming appellee would never exercise such right, and if appellant's expectations in this respect have not been realized, it was simply disappointed, rather than deceived, by the revocation. To say that the license is irrevocable because the thing permitted to be done necessarily involved the expenditure of money, would be going beyond the most extreme views on the subject, and make most licenses irrevo-

cable.  The practical effect of such a doctrine would be to make most licenses conveyances of an interest in land by mere estoppel *in pais*.  Ultra as this view manifestly is, if we stop short of it the present appeal can not be maintained.  Such a decision would establish the rule that all licenses founded upon a valuable consideration, or necessarily involving the expenditure of money, would be irrevocable, which would practically destroy the distinction between a license and a grant.  To go to this extent would be to overrule all this court has ever said on the subject, and place it in direct antagonism with the overwhelming current of authority.  This we are not prepared to do.

*Rehearing denied.*