ROBERT CROSDALE, Respondent, *v.* DANIEL M. LANIGAN, Appellant.

A parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is revocable at the option of the licensor; and this, although the intention was to confer a continuing right and money has been expended by the licensee upon the faith of the license.

Such a license, therefore, may not be changed into an equitable right on the ground of equitable estoppel.

Equity will only enforce a parol contract for an interest in land when the contract is definite and certain in all its parts.

In an action to restrain defendant from tearing down a wall erected upon his land by plaintiff under an alleged parol license, it appeared that the parties owned adjoining city lots. In grading his lot plaintiff raised an embankment along the line between the two lots. Defendant thereafter, in grading his lot, excavated the earth up to said line and to the embankment. In an interview between the parties plaintiff requested defendant to sell him two feet of his land to build a wall upon. Defendant declined at the time, but subsequently wrote plaintiff that he had decided to give him the two feet asked for. Plaintiff thereupon built the wall, and his attorney demanded a deed of the two feet. Defendant declined to execute a deed on the ground that he had not agreed to give a deed and that the wall was not built according to the understanding, and gave notice that he intended to tear it down. The trial judge decided in favor of plaintiff, on the ground that the license when executed became irrevocable. *Held,* error.

(Argued December 18, 1891; decided January 20, 1892.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department entered upon an order made February 3, 1891, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lawrence T. Jones* for appellant. The trial court erred in holding that it was immaterial whether or not plaintiff had built an artificial embankment, raising the earth several feet above the natural surface along the boundry line of his own premises next west of defendant prior to any excavating done by defendant. (Washb. on Eas. [4th ed.] 580, 600 ; *Thurston* v. *Hancock,* 12 Mass. 226 ; *Farrand* v. *Marshall,* 19 Barb. 380 ; *Lasala* v. *Holbrook,* 4 Paige, 169 ; *Radcliff* v. *Mayor, etc.,* 4 N. Y. 195 ; 1 Add. on Torts, 84 ; *Losee* v. *Buchanan,* 51 N. Y. 476.) The proposition stated in the opinions below to the effect that defendant is estopped from interfering with the wall because

it took the place of the lateral support owed by defendant to plaintiff is untenable. (*Panton* v. *Holland*, 17 Johns. 92; *Lasala* v. *Holbrook*, 4 Paige, 169; *Healy* v. *Clark*, 120 N. Y. 642; *Halpin* v. *P. Ins. Co.*, 118 id. 165; *Bedlow* v. *N. Y. D. Co.*, 12 id. 263; *Kennedy* v. *Porter*, 109 id. 526; *Smith* v. *G. F. Ins. Co.*, 62 id. 85; *James* v. *Cowing*, 82 id. 449; *Green* v. *Roworth*, 113 id. 462; *Bonnell* v. *Griswold*, 89 id. 122; *Schwinger* v. *Raymond*, 83 id. 192; *Tompkins* v. *Lee*, 59 id. 662; Wood on Nuisances, § 174; *McMaugh* v. *Burke*, 12 R. I. 499.) The right claimed by plaintiff of maintaining the wall in question upon defendant's premises, being an estate in lands, requires for its enjoyment that plaintiff have an easement in said premises. (*Nellis* v. *Munson*, 108 N. Y. 453; Washb. on Eas. [4th ed.] 2; *Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323.) The plaintiff in order to maintain this action must show that he has acquired an easement in defendant's land by grant or adverse possession, or the existence of such a state of facts that the defendant would be estopped in equity from interfering with the wall. (*Nellis* v. *Munson*, 108 N. Y. 453; *Wiseman* v. *Lucksinger*, 84 id. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323; 2 Washb. on Real Prop. [4th ed.] 303; 3 Kent's Com. [12th ed.] 453.) Plaintiff has not acquired an easement by grant or by adverse possession. (*Nellis* v. *Munson*, 108 N. Y. 453.) The plaintiff cannot claim equitable relief upon the ground that he had done certain acts in performance or part performance of a contract, for the reason that according to his own testimony there was no complete, definite and proper contract in pursuance of which said acts could have been performed. (*Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323; *Nellis* v. *Munson*, 108 id. 38; *Wheeler* v. *Reynolds*, 66 id. 227; *Rindge* v. *Baker*, 57 id. 209; Fry on Spec. Perf. § 557; *Wright* v. *Weeks*, 25 N. Y. 153.) Plaintiff never had anything more than a revocable license at most which was in fact revoked. (*Wiseman* v. *Lucksinger*, 84 N. Y. 31; *Cronkhite* v. *Cronkhite*, 94 id. 323.)

*M. M. Waters* for respondent.    The fraud which would be the result of permitting defendant to remove the wall after inducing the expenditure, receiving and enjoying the benefit thereof, etc., necessarily entitle a court of equity to prevent the defendant from depriving the plaintiff of the benefit of the expenditures made on the faith of the defendant's promise. (*Stewart* v. *Ahrenfelt,* 4 Den. 189 ; *Farrand* v. *Marshall,* 21 Barb. 409 ; *Smith* v. *Smith,* 4 N. Y. Supp. 669 ; *Freeman* v. *Freeman,* 43 N. Y. 34 ; *Rhyman* v. *Gillis,* 57 id. 68.) The evidence is amply sufficient to identify the wall built and its location and dimensions with " the two feet you asked to build your wall on," specified in the letter. (Fry on Spec. Perf. [3d ed.] 158.)    The Statute of Frauds is not available as a defense. (*Fargis* v. *Walton,* 107 N. Y. 398 ; *Rindge* v. *Baker,* 57 id. 206 ; *Freeman* v. *Freeman,* 43 id. 34.)

ANDREWS, J.    This case presents a question of importance from the principle involved, although the particular interest affected by the decision is not large.

The action was brought to obtain equitable relief by injunction to restrain the defendant from tearing down a stone wall erected on the defendant's land by the plaintiff, under an alleged parol license from the defendant, and in the erection of which the plaintiff expended in labor and materials a sum exceeding one hundred dollars.    The parties are the owners of adjoining lots fronting upon a public street.    The plaintiff's lot is west of the lot of the defendant.    The land in its natural state descended toward the east.    In 1886 the plaintiff graded his lot, and in so doing, raised an embankment several feet high along his eastern line, adjacent to the lot of the defendant, and erected a house on his lot.    In 1887 the defendant graded his lot and excavated the earth up to his west line, adjacent to the embankment on the plaintiff's lot, to the depth of four or more feet, thereby removing the natural support to the lot of the plaintiff as it was in its original state.    Before the defendant had completed his excavation, the parties had an interview and the question of the

support of the plaintiff's embankment arose. The plaintiff claimed that the defendant was bound to build a wall where his excavation was. The defendant denied his obligation to do so and referred to the fact that the plaintiff had raised his land several feet higher than it was in its natural state. The plaintiff wanted the defendant to sell him two feet of his land to build a wall upon, which the defendant declined to do.

Both parties agree that the wall was spoken of. The plaintiff testified that nothing was said between them as to what kind of a wall the plaintiff would build, nor as to its height, dimensions or quality. The defendant on the other hand testified that the plaintiff stated he would build a wall laid up in mortar, pointed on the side facing the defendant's (proposed) house, and cement it on the top with Portland cement. Some days after the interview and on the 13th day of April, 1887, the defendant addressed a letter to the plaintiff, in which, after referring to their previous interview, he said : " While perfectly satisfied that I am justified in grading my lot as far as I have done, and that if at any time your embankment should topple over on my land, that I could claim damages, yet, perhaps, I was a little hasty and somewhat unreasonable with you the other night, and although I came away fully determined to stand on my rights and keep every inch of ground that belonged to me, since then I have thought the matter over seriously, put myself in your place, so to speak, and decided to give you two feet asked for to build your wall on." The plaintiff on the same day replied in writing, saying : " I will be glad to accept your offer in the spirit in which it was given, and thus end a disagreement, etc. I expect to go to work immediatety to build the wall, and will go as far into my bank as is consistent with its safety. I will also modify as much as I can the grade of the bank along the side and the front." The plaintiff thereupon proceeded to build a wall on the defendant's land, the building of which occupied four or five days. He first made a contract with a mason to build a mortared wall, and lime and sand were drawn upon the place to be used therefor. But for some reason he changed

his mind, and he built the wall of "flat, ordinary building stone, not hewn into shape and not packed into regular courses, nor dressed at all," and without mortar or cement. The wall was ninety feet in length, two feet or less in width, and four to six feet high. It does not appear that the defendant saw the wall during the course of its construction, except that he was upon the lot on one occasion when the foundation was being laid, nor does it appear that he knew that the wall was to be laid up loose, or at any time consented to the erection of such a wall as was constructed. Within two weeks after the wall was completed he notified the attorney for the plaintiff, who, at the request of his client, had written him, demanding a deed of the two feet, that he had not agreed to give a deed, and that the wall was not built according to the understanding, and that he intended to tear it down.

This case was tried and decided upon the theory that the plaintiff had a license from the defendant to build the wall on his land, which, when executed, became in equity irrevocable. It was not claimed on the trial, nor is it now claimed, that there was any contract on the part of the defendant to sell the land occupied by the wall to the plaintiff, which, by reason of part performance, equity will enforce. The claim and the finding is that the license to enter upon the defendant's land, when acted upon by the plaintiff, conferred upon him a right in equity, in the nature of an easement, to maintain the wall on the defendant's lot. If this claim is well founded, there has been created, without deed and in violation of the Statute of Frauds, an interest in the plaintiff and his assigns in the land of the defendant, impairing the absolute title which he theretofore enjoyed, and subjecting his land to a servitude in favor of the adjacent property. It is quite immaterial in result that this interest claimed, if it exists, is equitable and not legal. An encumbrance has been created upon the defendant's lot, and his ownership, to the extent of such interest, has been divested.

We are of opinion that this judgment is opposed to the rule

of law established in this state. There has been much contrariety of decision in the courts of different states and jurisdictions. But the courts in this state have upheld with great steadiness the general rule that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is, nevertheless, revocable at the option of the licensor, and this, although the intention was to confer a continuing right and money had been expended by the licensee upon the faith of the license. This is plainly the rule of the statute. It is also, we believe, the rule required by public policy. It prevents the burdening of lands with restrictions founded upon oral agreements, easily misunderstood. It gives security and certainty to titles, which are most important to be preserved against defects and qualifications not founded upon solemn instruments. The jurisdiction of courts to enforce oral contracts for the sale of land, is clearly defined and well understood, and is indisputable; but to change what commenced in a license into an irrevocable right, on the ground of equitable estoppel, is another and quite different matter. It is far better, we think, that the law requiring interests in land to be evidenced by deed, should be observed, than to leave it to the chancellor to construe an executed license as a grant, depending upon what, in his view, may be equity in the special case. There are several circumstances in the present case which render the enforcement of such a jurisdiction a dangerous precedent. The only license claimed is contained in the letter of April thirteenth. The language is: "I have decided to give you the two feet you asked for to build your wall on." How far the wall was to extend, its character, or how it was to be built, is not stated. Referring to the previous interview to which the letter alludes, the evidence of the plaintiff of what was said at the interview leaves the whole matter indefinite and uncertain. He testifies that neither the description, dimensions and character of the proposed wall were spoken of. The testimony of the defendant is to the contrary, but perhaps it is to be assumed that the trial judge adopted the testimony of the plaintiff.

Upon the case made by the plaintiff upon the letter and the prior conversations, if it was a case of contract, it is difficult to see how it could be enforced in equity. The cases are decisive that equity will only enforce a parol contract for an interest in land when the contract is definite and certain in all its parts. The extent of the injury which will be suffered unless equity intervenes is also an element to be considered when its extraordinary jurisdiction is invoked. Here the amount expended by the plaintiff in reliance upon the license was comparatively small. The most reasonable inference is that the plaintiff confided in the good faith of the defendant as his security that the wall would be permitted to remain. It does not appear that anything was said as to the time it should be maintained. It is claimed that the wall was built for the benefit of both parties. This is founded on the assumption that the defendant's excavation removed the natural support of the plaintiff's land, and subjected him to liability. But this would not take the case out of the statute nor authorize the interference of equity to enforce the license as a grant in equity. The same element of common benefit is found in the case of *Cronkhite* v. *Cronkhite* (94 N. Y. 323).

The trial judge refused to find the facts as to the effect which would have followed from the defendant's excavation in case the plaintiff's land had continued in its natural state. He tried and decided the case on the theory that the license when executed became irrevocable. In this we think he erred. The cases of *Mumford* v. *Whitney* (15 Wend. 380); *Wiseman* v. *Lucksinger* (84 N. Y. 31) and *Cronkhite* v. *Cronkhite* (*supra*) are, we think, decisive of this action.

The judgment should be reversed.

All concur.

Judgment reversed.