(May 16, 1905.)

## HOWES v. BARMON.

[81 Pac. 48.]

LICENSE TO PASS OVER STAIRWAY—EASEMENT—STATUTE OF FRAUDS—
EQUITABLE INTERPOSITION—SPECIFIC PERFORMANCE.

1. A license is a personal privilege to do certain acts upon the
lands of another, but creates no estate therein, is revocable at
will, and may rest in parol, while an easement is an estate in
real property and its grant falls within the statute of frauds.

2. Where B. is erecting a two-story building ˗˗ ' proposes to
H. & K., who own and occupy a two-story building on the adjoin-
ing lot, that he will build a stairway on the side of his building
next to H. & K's building, and that they may use the same for
ingress and egress to and from the second story of their building
in consideration of H. & K. allowing B. to erect a porch on a five
foot strip of a vacant lot adjoining the back end of B.'s building,
and each party agrees thereto and enters upon the use so agreed
upon, held, that the permission to use such stairway does not
amount to the grant of an easement, but constitutes a license
only and is revocable by the licensor.

3. A court of equity will not grant the aid of specific perform-
ance where the party invoking its aid has not parted with any
consideration or property, and no irreparable damage is suffered
and no fraud is inflicted upon him, and where he is in statu quo
at the time of the commencement of his action.

4. Unless the evidence be clearly to the contrary, a court will
presume that a · parol agreement to impress real property with
a servitude was made with a knowledge of the provisions of the
statute of frauds, and was therefore intended as a license only
and not as an easement.

(Syllabus by the court.)

APPEAL from the District Court in and for the County of
Shoshone. Honorable Ralph T. Morgan, Judge.

Plaintiffs commenced an action to enjoin the defendants
from closing up a stairway in their building, and to restrain
them from interfering with plaintiffs' right of passage there-
over, and to compel specific performance of a parol agree-
ment for the grant of a perpetual easement for the use of

such stairway. Judgment and decree were entered for the plaintiffs, from which defendants appealed. Reversed.

Walter A. Jones and Samuel R. Stearn, for Appellants.

One who seeks to enforce a specific performance of a contract is bound to establish clearly and distinctly the existence of a contract and its terms. A court of equity will not decree specific performance of a contract if not clearly established. (*Rice v. Rigley,* 7 Idaho, 115, 61 Pac. 290.) Plaintiffs claim that this was an easement. If we admit that it was, then they come within the rule that an easement cannot be created by parol. (Tiedeman on Real Property, sec. 600; 10 Am. & Eng. Ency. of Law, 2d ed., p. 412; *Deeds v. Stephens* (Idaho), 79 Pac. 77.) A license is an authority given to do some act or a series of acts on the land of another, without possessing an estate therein, and is revocable. (10 Am. & Eng. Ency. of Law, 2d ed., p. 407; 18 Am. & Eng. Ency. of Law, 2d ed., pp. 1127, 1146; Tiedeman on Real Property, sec. 653.) In *Pifer v. Brown,* 49 L. R. A. 497, will be found a note explaining the doctrine that a parol license from one lot owner in a town to another to pass a tile drain under the former lot for the purpose of draining the lot of the latter is revocable at the pleasure of such licensor, and that such license must be acquired by deed. (*Wiseman v. Lucksinger,* 84 N. Y. 3, 38 Am. Rep. 479; *Cronkhite v. Cronkhite,* 94 N. Y. 323; *Crosdale v. Lanigan,* 129 N. Y. 604, 26 Am. St. Rep. 551, 29 N. E. 824; *Hathaway v. Yakima Water Co.,* 14 Wash. 469, 53 Am. St. Rep. 874, 4 Pac. 896.) In *Bonelli Bros. v. Blakemore,* 66 Miss. 136, 14 Am. St. Rep. 550, 5 South. 228, in giving a definition of "way," which is but another term for an easement, the following is quoted: "A 'way' is an incorporeal hereditament, for since livery of seisin could not have been made of it, at common law, it could only be created by deed or other writing. It is therefore said to lie in grant." (Greenleaf's Cruise on Real Property, title Deed "C," 4, secs. 35, 36.) But a right of way is an interest in lands and a grant by parol is obnoxious to the statute of frauds. (*Thompson v. Gregory,* 4 Johns. 81, 4 Am.

Dec. 255; *Richter v. Irwin,* 28 Ind. 26; *Hall v. McLeod,* 2 Met. (Ky.) 98, 74 Am. Dec. 400; Kerr on Statute of Frauds, sec. 718; *Walker v. Shackleford,* 49 Ark. 503, 4 Am. St. Rep. 61, 5 S. W. 887; *Hodkins v. Farrington,* 150 Mass. 19, 15 Am. St. Rep. 168, 22 N. E. 73, 5 L. R. A. 209.) Parol license to do something on the licensor's land becomes irrevocable after expenditure of money on land on the faith of the license, and when the parties cannot be placed *in statu quo;* but where nothing has been done further than to pay a consideration, there is nothing in the way of restoring the parties to their original condition, and therefore of revoking the license. (*Huff v. McCauley,* 53 Pa. St. 203, 91 Am. Dec. 203; *Wilson v. St. Paul M. & M. Co.,* 41 Minn. 56, 42 N. W. 600, 4 L. R. A. 378; *Woodward v. Seely,* 11 Ill. 157, 50 Am. Dec. 445; *Johnson v. Skillman,* 29 Minn. 95, 43 Am. Rep. 192, 12 N. W. 149; *Great Falls Waterworks Co. v. Great Northern Ry. Co.,* 21 Mont. 487, 54 Pac. 966.)

W. W. Woods and R. N. Dunn, for Respondents.

This court has frequently passed upon and always affirmed the equitable power of the court in proper cases to grant specific performance of parol contracts for the sale of lands. Part performance take these cases out of the provisions of the statute of frauds. (*Bowman v. Ayres,* 2 Idaho, 465, 21 Pac. 405; *Stowell v. Tucker,* 7 Idaho, 312, 62 Pac. 1033; *Feeney v. Chester,* 7 Idaho, 324, 63 Pac. 192; *Francis v. Green,* 7 Idaho, 668, 65 Pac. 362; *Barton v. Dunlap,* 8 Idaho, 82, 66 Pac. 832; *Flickinger v. Shaw,* 87 Cal. 126, 22 Am. St. Rep. 234, 25 Pac. 268, 11 L. R. A. 134; *Grimshaw v. Belcher,* 88 Cal. 217, 22 Am. St. Rep. 298, 26 Pac. 84; *Deeds v. Stephens,* 8 Idaho, 514, 69 Pac. 534.) It is a general proposition well sanctioned by law that contracts made by husband and wife, where possession has been delivered, will be specifically enforced. (*Clayton v. Frazier,* 33 Tex. 91; *Womack v. Womack,* 8 Tex. 397, 58 Am. Dec. 119; *Dalton v. Rush,* 22 Ex. 133.)

AILSHIE, J.—In this case the trial court entered a decree for the specific performance of a parol contract to grant a

perpetual easement in a stairway maintained in appellants'
building. The principal facts upon which the decree was en-
tered are briefly as follows: In the month of November, 1899,
the respondents, Howes & King, were the owners of lot 6 and
the south one-half of lot 8 in block 21 in the city of Wallace,
on which stood a two-story brick building, the ground floor
of which was occupied by them as a store building and the
second floor as a dwelling. About this time the appellants
purchased the north half of lot 8, which adjoins the Howes
& King property on the east, and began to erect a two-story
brick building fifty feet square. Prior to this time Howes
& King had maintained a back stairway to their building
with the landing on the vacant lot purchased by the Bar-
mons, and in passing from the street to and from their
stairway they passed over this vacant lot. When the Bar-
mons began to build they tore away the landing, and, of
course, left Howes & King without any means of ingress or
egress to and from the second story of their building. At
this juncture the respondent Howes and the appellant Abra-
ham Barmon had some discussion over the construction of a
stairway by the Barmons and the future use thereof by Howes
& King. Up to this time the Barmons had planned to build
their stairway on the east side of their building. Howes and
Barmon do not agree as to what conversation took place be-
tween them with reference to the stairway and the future
use thereof, and we therefore quote from the finding of the
trial court on that point. He finds "that during the time
of the construction of said building these defendants offered
to give the plaintiffs the use forever of the front stairway
leading to the upper story of their said building and con-
necting with the upper story of the building so occupied by
the plaintiffs and their families, for the consideration of a
strip of land of five feet on the north part of the south one-
half of lot 8, block 21, and plaintiffs agreed to said propo-
sition." This finding of the court is followed by a finding
that in the month of November, 1899, in pursuance of said
contract, the plaintiffs went into the possession and use of
the stairway, and the defendants at the same time went into

the possession and use of the five foot strip off the north end of the south half of lot 8. This strip of land was contiguous to and immediately south of the Barmon premises, on which the building was erected. The record shows that after the conversation took place between Howes and Barmon, the plans for the Barmon building were so modified as to run the stairway up on the west side of the building and next to the Howes & King building instead of on the east side as originally planned. No written agreement of any kind was entered into, and after the building was completed the stairway was used by the Barmons and their tenants and also by Howes & King and their tenants. On the other hand, the Barmons, by means of posts, erected a porch five feet wide and fifty feet long (the full length of their building) to the second story of the building, and used that in connection with their residence in the second story of that building until a few days prior to the commencement of this action. Matters ran along in this manner until about the fourteenth day of June, 1902, when the Barmons tore away the porch and ceased to use the same, and notified Howes & King that it was their intention to revoke the license previously granted to them to use the stairway, and they thereupon proceeded to lock up the front entrance and close up the entrance from the top of the stairway into the Howes & King building. The respondents thereupon commenced this action and secured a temporary injunction against the appellants, restraining them from closing up the stairway or interfering with their free use thereof. The Barmon property was purchased in the name of Fannie Barmon, the wife of the defendant, Abraham Barmon, and at all times has stood upon the records in her name and is claimed by her as her separate property. A great portion of the briefs of counsel have been devoted to the discussion of the evidence on that question and the law applicable thereto. The court found, however, that the property was the community property of the defendants, and we are inclined to think there is sufficient evidence in the record to justify that finding. It is not necessary for us, however, to discuss the sufficiency of the evidence

to sustain the findings for the reason that in the view we take of this case the findings of fact do not support the legal conclusions that the court has drawn from them.

The appellants claim that the privileges exercised by each over the realty of the other were merely mutual licenses revocable by either at will. On the other hand, the respondents claim that these transactions amounted to mutual contracts for conveyances by good and sufficient deeds—a title from Howes & King to the Barmons to the five-foot strip of ground immediately south of the Barmon building, and a conveyance from the Barmons to Howes & King of a perpetual easement in the stairway ascending from the street to the second story of their building.

It is difficult to ascertain from the great mass of conflicting decisions just when a license to use or impose a servitude upon the real property of another ceases to be a mere license revocable at will, and ripens into the certainty and dignity of an easement. Still, there are some primary and fundamental principles well established which underlie this class of cases, a reference to which should afford a reasonably safe guide.

It is settled law that a license creates no estate in lands, and may therefore rest in parol. (*Johnson v. Skillman,* 29 Minn. 95, 43 Am. Rep. 192, 12 N. W. 149; *Mumford v. Whitney,* 15 Wend. 380, 30 Am. Dec. 60; *Great Falls Waterworks Co. v. Great Northern Ry.,* 21 Mont. 487, 54 Pac. 963; *Cook v. Stearns,* 11 Mass. 533; *Clark v. Glidden,* 60 Vt. 702, 15 Atl. 358; *Wood v. Leadbitter,* 16 Eng. Rul. Cas. 54; Jones on Easements, secs. 63, 68.) On the other hand, an easement is an interest or estate in real property, and is subject to the operation of the statute of frauds. (Rev. Stats., sec. 6007; 14 Cyc. 1144; *Pifer v. Brown,* 43 W. Va. 412, 27 S. E. 399, 49 L. R. A. 497, and note; *Clark v. Glidden, supra;* Jones on Easements, sec. 65.) Where the contract or agreement, whether it be called a license or an easement, looks to the acquirement of a right of passage, as in this case, over a stairway, and rests entirely in parol, it is clear under all the authorities that the licensee or grantee must have entered into possession, expended money and made improvements in such

manner and to such an extent that a refusal to enforce the agreement in specific terms would work a fraud upon the licensee or grantee. (10 Am. & Eng. Ency. of Law, 2d ed., 412; 18 Am. & Eng. Ency. of Law, 2d ed., 1146; *Baltimore & H. R. Co. v. Algire,* 65 Md. 337, 4 Atl. 293. See note to *Pifer v. Brown, supra.*) It is also true that the alleged part performance relied on to take the case out of the statute of frauds must be founded on and referable solely to the specific terms of the agreement. (*Johnson v. Skillman, supra; Wheeler v. Reynolds,* 66 N. Y. 227; *Wiseman v. Hucksinger,* 84 N. Y. 31, 38 Am. Rep. 479.) In this case the respondents had parted with nothing whatever. They paid no consideration for the perpetual easement they claim to have purchased. They were out nothing for the construction of the stairway, and the evidence shows that they never at any time have assisted in maintaining or keeping up the stairway, keeping the same cleaned or lighted; nor did the respondents offer to show upon the trial what agreement, if any, they made with reference to the maintenance of the stairway or the care and lighting of the same, or the width thereof or the character of the stairway which should be constructed or maintained. It is true that the appellants entered into the possession and use of the five-foot strip of land which respondents contend was to be given as a consideration for this easement. But it is not contended anywhere that the use of this strip of land was of any greater value for the same period of time than was the right to pass over the stairway for a like period of time. These rights appear to have been mutual and interchangeable, and one would apparently offset the other. This arrangement or agreement should be interpreted and dealt with in the light of the circumstances under which the parties acted. It is clearly apparent from the testimony of both Howes and Barmon that whatever conversation or agreement they had it was merely in the light and spirit of an exchange of neighborly courtesies, and was never given the consideration which the parties would attach to a contract which looks to one party parting with the fee to his property and the other to burdening his realty with a perpetual ser-

vitude. As an instance of this, the title to the property stood on the records in the name of Mrs. Barmon at the time of the agreement, and yet no contract was made with her and nothing appears to have been said in reference to the transfer of title or whether or not the property was community property or the separate property of the wife.

There is no reason shown in this case that we can discover why the aid of a court of equity should be invoked in behalf of the plaintiffs. If the court should refuse to decree them a perpetual easement in this stairway, they would be in no worse position than they would have been in the first place had the Barmons erected their building without permitting plaintiffs to use their stairway. In that event Howes & King would have been under the necessity of erecting a stairway by means of which to reach the second story of their building. They have parted with no consideration for the use of this stairway, nor have they lost any property or right by reason of having neglected to build a stairway themselves. If they are refused a decree in this case they will only be left in the same position they originally occupied. This is a case where a refusal by the court to grant plaintiffs a decree will leave them absolutely *in statu quo*. But courts of equity grant relief in such cases upon the principal theory that the parties cannot be placed in the position they originally occupied, and therefore equity will compel them to live up to their agreements. Here the reasons for equitable interposition do not seem to exist, and we do not think it would be either just or conscionable for a court to encumber the appellants' property with a perpetual servitude which the evidence shows would depreciate the property from ten to twenty-five per cent. The privileges granted by appellants to respondents were evidently of a purely personal character, and would not have been conferred on a stranger to the licensors, even though he had had title to the Howes & King property. But if the easement should be decreed as contended for it would run with the Howes & King property and would pass to their grantees, whoever they might be. After the perusal of a great number of conflicting and in-

harmonious decisions, we have been unable to find any case where the courts have held a license such as this irrevocable on the grounds alone that the licensee had been let into possession; but in such cases where specific performance has been required the courts have uniformly rested their decisions upon the grounds that the licensee had not only been let into possession, but that he had made expenditures or erected valuable improvements for which he could not be adequately compensated in damages. (*Lawrence v. Springer*, 49 N. J. Eq. 289, 31 Am. St. Rep. 702, 24 Atl. 933; *Wheeler v. Reynolds, supra;* notes to cases hereinbefore cited.) The modern decisions seem strongly inclined to hold parol agreements looking to the encumbering real property with a servitude as a mere license revocable at will, and this, we think, the much safer rule. While this court is not now prepared to go to the extent announced in *Crosdale v. Lanigan,* 129 N. Y. 604, 26 Am. St. Rep. 551, 29 N. E. 824, still the language there used by the New York court appeals to us as both safe and just when they say: "The courts in this state have upheld with great steadiness the general rule that a parol license to do an act on the land of the licensor, while it justifies anything done by the licensee before revocation, is nevertheless revocable at the option of the licensor, and this, although the intention was to confer a continuing right, and money had been expended by the licensee upon the faith of the license. This is plainly the rule of the statute. It is also, we believe, the rule required by public policy. It prevents the burdening of land with restrictions founded upon oral agreements easily misunderstood." (See, also, *Johnson v. Skillman, supra; Cronkhite v. Cronkhite,* 94 N. Y. 323; *St. Louis Nat. Stock Yards v. Wiggins,* 112 Ill. 384, 54 Am. Rep. 243; *Wood v. Michigan & C. R. R. Co.,* 90 Mich. 334, 51 N. W. 263.) This seems to grow out of the proposition that since a parol license to impress real property with a servitude cannot be perpetual or irrevocable on account of the prohibitions of the statute of frauds, and the parties not having complied with the requirements of the statute, they will be presumed

to have dealt in conformity with law, and therefore to have intended a license rather than an easement.

The trial court evidently concluded in this case that the acts and conduct of the parties amounted to an executed contract for a perpetual easement over the appellants' property, but we are clearly of the opinion that it only amounted to a license revocable at will. It follows that judgment must be reversed, and it is so ordered. The cause is remanded, with directions to enter judgment in accordance with the views herein expressed. Costs awarded to appellants.

Stockslager, C. J., and Sullivan, J., concur.