**William John JOSEPH, Appellant,**

**v.**

**SHERIFFS' ASSOCIATION of Texas, Appellee.**

**No. 11640.**

Court of Civil Appeals of Texas.

Austin.

July 24, 1968.

Osorio & Palmer, Tom Thomas, Austin, for appellant.

Procter & Jones, James H. Granger, Austin, for appellee.

HUGHES, Justice.

This appeal is from an order of the trial court denying the application of William John Joseph for a temporary injunction enjoining the Sheriffs' Association of Texas, a corporation, from interfering with or obstructing his use of a driveway located between their respective properties, described below. This driveway is about fifteen feet in width, approximately ten feet of which is owned by appellee and about five feet of which is owned by appellant.

The parties own adjacent lots on North Lamar Boulevard in Austin, Texas. Both lots were formerly owned by Mr. O. D. Denson. Appellant acquired his lot in 1948 from Mr. Denson. Appellee acquired its lot in 1952 from Mr. James Cole who had purchased it from Mr. Denson. Appellant has operated a drive in restaurant on his property, known as the Stallion, since shortly after its acquisition. He has parking in the rear for patrons who go in the restaurant to be served. These customers use the driveway in suit to reach this parking area. Parking in front is furnished for those served in cars. Appellee has its headquarters in buildings on its property. It is now in the process of remodeling its buildings and in doing so has obstructed the driveway used by appellant's customers who park in the rear. Appellee has also expressed its intention of enclosing its ten feet by a permanent fence. This would foreclose the use of the driveway for automobiles.

The basis of appellant's claim to the use of appellee's ten feet for a driveway, as disclosed by his pleadings, is as follows:

"Plaintiff originally began utilizing the driveway in question at the time ownership of the property now belonging to defendant was vested in Mr. James Cole. Subsequent to the conveyance of the property to defendant by Mr. Cole, plaintiff approached defendant's officers and agents and requested permission to continue his use of the driveway and was granted such permission upon strict conditions and requirements. Plaintiff, at the request and insistence of defendant's officers and agents, paved the driveway and erected a steel railing on the South boundary thereof, thus protecting defendant's property and defining and delineating the boundary of the driveway and the confines of plaintiff's rights to usage thereof. Plaintiff in improving the driveway and in subsequent maintenance thereof has expended sums of money in reliance upon the permission granted to him by defendant and upon the representation to him that the driveway would be available for his use so long as he desired. In accordance with the permission granted by defendant and the agreement reached between the parties, plaintiff has consistently and uninterruptedly used the driveway since defendant has owned the property."

Appellee filed no answer.

At the temporary injunction hearing, appellant testified:

"Q  All right, sir; now, were you utilizing that driveway at the time the property was sold?

A  Yes, sir, we were.

Q  Did you then go to any member or officer, or any part of the Sheriff's Association and request permission to continue using the driveway?

A  Yes, sir, I did.

Q Do you recall to whom you talked?

A Yes, sir, I do.

Q Who were those people?

A Mr. Decker, the Sheriff of Dallas was representing them. Mr. Neeley was in charge of the Sheriff's Association at that time.

THE COURT: When was this, Mr. Joseph?

THE WITNESS: This was at the time they purchased it, Your Honor. I believe it was in the latter part of 1950 when they purchased it.

Q (By Mr. Thomas) So you talked then to Mr. Decker and Mr. Neeley, did you say?

A Yes, sir, Mr. Neeley, N-e-e-l-e-y.

Q Did they give you permission at that time to continue using the driveway?

A Mr. Thomas, they stipulated a condition to using this driveway, which we complied with. We did.

\* \* \* \* \* \*

Q And what were those conditions?

A Mr. Thomas, the conditions were that I would pave the front end of their property.

\* \* \* \* \* \*

Q Pave it?

A Blacktop it, yes sir, and Mr. Decker really wanted, for sure, to put an iron railing around the property, embedded in cement, and across the front of the property all the way to the back of the building.

Q Did you place that iron rail there then?

A I certainly did, sir.

Q At your expense?

A Yes, sir.

Q And you say you paved it at your expense. Is that correct?

A Yes, sir."

The cost of these improvements were stated to be about seven hundred dollars.

Appellant further testified:

"Q Did Mr. Decker or Mr. Neeley represent to you how long you would be able to use this driveway if you constructed the improvements?

A Yes, sir.

Q How long?

A As long as they owned that property."

Appellant also gave this version of his agreement respecting this driveway:

"So Mr. Decker was just as nice as he could be, also, and he was a friend, Your Honor, so he said, 'I will tell you what you do.' He said, 'You pave this front end, get it straightened around \* \* \*' Occasionally, Your Honor, someone would back into the fence of their property, and we fixed the fence several times before we put that railing in there, and every time they bumped the fence, somebody did it, I would fix it and apologize to Mr. Neeley about it, so he said, 'You go ahead and put a railing around here so they can't bump into the fence, and then forget about it.' He said, 'You don't have no problem,' and this is the agreement that I have had, Your Honor, and this is the way it was.

THE COURT: Well, you know there wasn't any question but that the Deputy

Sheriff's Association could use that driveway, too, if they wanted to?

THE WITNESS: Certainly, Your Honor. Your Honor, I asked Mr. Decker to put this on paper for me. I said, 'Mr. Decker, Mr. Neeley is an old gentleman.' I said, 'What if something happened to him and somebody else comes in that is not as friendly as he is?' He said, 'You have no problem; just do what I ask you to do. You do what I tell you, and that is the way it is going to be,' and I thanked him for it, and I did, and I complied with it.

THE COURT: And so, nothing was written?

THE WITNESS: He wouldn't go for it."

Mr. Lewis Berry, Executive Secretary of the Sheriffs' Association of Texas, testified that he knew Mr. W. E. Neeley, now deceased, and that he edited a magazine for the Association and had offices on the property of the Association but that he was never an officer of it. Mr. Berry also testified that Mr. Decker, in 1949 and 1950, was Vice President of the Association and one of its directors, and that the Association had been incorporated for ninety years.

There is no evidence that the Board of Directors of the Association authorized either Mr. Decker or Mr. Neeley to enter into any agreement with appellant regarding the use of this strip of land.

There is evidence that the loss of the use of this driveway will not prevent appellant's customers from driving to the parking area in the rear of the restaurant as there is sufficient space owned by appellant for a driveway on the opposite side of his restaurant which will serve this purpose.

As to damages, appellant testified that he had lost some customers because the driveway between his place and appellee's

place was blocked by appellee. On the other hand, appellee's Mr. Berry testified that unless this driveway could be used during construction of improvements on appellee's property that such construction could not be completed.

■ It is our opinion that the most that appellant has pleaded or has established under the evidence is a license to use a portion of appellee's property, not an easement as he contends.

A license in real property is a privilege or authority given or retained to do some act or acts on the land of another. It imports no estate or interest in the property. Licenses, 36 Tex.Jur.2d, Sec. 79, p. 668. We quote the following from 25 Am.Jur.2d, Sec. 123, p. 525–6:

"A license in real property is defined as a personal, revocable, and unassignable privilege, conferred either by writing or parol, to do one or more acts on land without possessing any interest therein. Indeed, the distinguishing characteristics of a license in land are that it gives no interest in the land and that it may rest in parol. This must necessarily be so, since if by a license an interest in the land could be created within the meaning of the statute of frauds, under that statute it could not be created by parol, and if created by grant and an interest in the land thereby passes, the distinctive feature of the transaction as a license vanishes at once. Accordingly, a license is chiefly distinguishable from an easement in that an easement implies an interest in land, which ordinarily is created by a grant, and is permanent."

We also quote the following footnote cited in support of the above text:

"Unless the evidence is clearly to the contrary, a court will presume that a parol agreement to impress real property with a servitude was made with a knowledge of the provisions of the statute of

frauds, and was therefore intended as a license only, and not as an easement. Howes v. Barmon, 11 Idaho 64, 81 P. 48 [69 L.R.A. 568]."

In the case before us, Mr. Decker expressly refused to put the agreement in writing. Also, the agreement to which appellant testified was limited, in time, to appellee's ownership of the property. We do not hold that an easement may not be limited in time, but we consider this limitation in determining the nature of the agreement before us.

As we view this record, Sheriff Decker was merely acting the role of a good neighbor in giving permission to appellant to make use of the driveway. We simply cannot, under the evidence, attribute to the Sheriff any intent to permanently deprive the Association of this portion of its property.

Licenses are generally revocable at the will of the licensor, however, when expenditures have been made in reliance on the license revocation should be allowed only in a fair and equitable manner. See Licenses, Sec. 85, Tex.Jur.2d. Here, appellant made an expenditure of $700.00, and has had seventeen years usage of appellee's ten foot strip. These matters are not now before us.

It is our conclusion that appellant has not established a probable right of recovery which should be protected by issuance of a temporary injunction. We are also of the opinion that, balancing the hardships in granting or denying a temporary injunction, appellee would suffer more by an improper grant of an injunction than appellant would suffer from an improper denial of an injunction. We, therefore, hold that the trial court did not abuse his discretion in denying appellant the temporary injunction he sought.

The judgment of the trial court is affirmed.

PHILLIPS, C. J., not sitting.