**Read OMOHUNDRO, Appellant,**

v.

**James R. JACKSON, Appellee.**

No. 08–00–00145–CV.

Court of Appeals of Texas, El Paso.

Jan. 11, 2001.

R.B. 'Jerry' McGowen, McGowen & Lyon, P.C., Sherman, for Appellant.

W. Anthony O'Hanlon, Sanders, O'Hanlon & Motley, P.L.L.C., Sherman, for Appellee.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

LARSEN, Justice.

In this trespass to try title suit, Read Omohundro appeals from the trial court's judgment in favor of plaintiff James R. Jackson. Omohundro challenges the trial court's judgment finding Jackson had superior title of the disputed property, despite Omohundro's earlier possession of an unrecorded deed. We affirm.

## FACTS

On June 20, 1974, Omohundro obtained a deed from Harrison Builders for Lot 65, adjacent to a lot he already owned. Omohundro did not record this deed until January 1977. On December 28, 1976, Harrison Builders conveyed the same lot by warranty deed to Harold Scott, with Mercantile Bank financing Scott's purchase. That day, Scott gave Mercantile Bank a deed of trust as collateral in exchange for a purchase money mortgage, which was not part of an antecedent debt. The deed of trust was recorded the following day. Meanwhile, Omohundro had planted a garden on Lot 65, but built no structures. On April 6, 1978, Mercantile Bank foreclosed on Scott's deed of trust and seized Lot 65. Thereafter, Lot 65 passed through a series of transactions, culminating in Bank One's sale to Jackson in April 1992 and Jackson's recording of that warranty deed. Jackson spent approximately $4,900 on improvements to Lot 65.

On June 22, 1999, Jackson filed this trespass to try title suit. The trial court rendered judgment in favor of Jackson and entered findings of fact and conclusions of law, stating that: (1) Mercantile Bank was a "creditor" as that term is defined in Texas Property Code Section 13.001; (2) Mercantile Bank's recorded deed of trust was superior to Omohundro's later-recorded warranty deed; (3) any subsequent purchasers in Mercantile Bank's chain of title obtained superior title to Lot 65 as well, with or without notice, including Jackson; and (4) Jackson owns a 100 percent fee simple, undivided interest in Lot 65.

Omohundro appeals contending that he has superior right to title because Harrison Builders conveyed Lot 65 to him first, notwithstanding his failure to record his deed before Harrison conveyed the same property to Scott. He also asserts that there is insufficient or no evidence that: (1) Scott received the deed for valuable consideration and without notice of the prior deed to Omohundro; or (2) Mercantile Bank received the deed of trust from Scott for valuable consideration and without notice of the prior deed to Omohundro.

## STANDARD OF REVIEW

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict.[1] A trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's verdict.[2] When confronted with both legal and factual sufficiency points, we must first examine the legal sufficiency point.[3]

In reviewing a "matter of law" point, the reviewing court employs a two-

---

1.  See *Mohnke v. Greenwood,* 915 S.W.2d 585, 589 (Tex.App.—Houston [14th Dist.] 1996, no writ).

2.  See *id.*

3.  See *id.*

prong test.[4] First, the court must examine the record for evidence that supports the finding, while ignoring all evidence to the contrary.[5] If there is no evidence to support the finding, the reviewing court must then examine the entire record to determine if the contrary proposition is established as a matter of law.[6] If the proposition asserted by the appellant is established as a matter of law, the point will be sustained.[7]

In reviewing a factual challenge, the appellate court must examine the entire record and set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust.[8] The findings of fact must be upheld if there is more than a scintilla of evidence to support them.[9] When undertaking a factual sufficiency review, the court of appeals may not set aside fact findings merely because it could have drawn different factual findings and legal conclusions from the evidence.[10] The appellate court cannot retry the case or otherwise substitute its judgment or opinion for that of the trier of fact.[11] The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and the appellate court should not act as a thirteenth juror in assessing the evidence and the credibility of the witnesses.[12]

### Trespass to Try Title

In a trespass to try title action, the plaintiff (here, James Jackson) must recover, if at all, on the strength of his own title and may not simply rely on the weakness of another party's claim.[13] It was plaintiff's burden to establish superior title by a preponderance of the evidence.[14] This burden can be shown by: (1) title emanating from the sovereignty of the soil; (2) a superior title in itself emanating from a common source; (3) title by adverse possession; or (4) title by prior possession coupled with proof that possession has not been abandoned.[15] Here, Jackson relied upon the second way of proving title. He contended, and the trial court agreed, that his title was superior because Mercantile Bank, which was in Jackson's chain of title, was a creditor who gave valuable consideration without notice of Omohundro's deed. It is undisputed that both titles emanated from a common source—Harrison Builders.

### Evidence disputing that Scott took from Harrison Builders for value and without notice is not dispositive of claims by Jackson

In his first issue on appeal, Omohundro urges that there is legally and factually insufficient evidence to show that Scott (the first grantee from the common source) received Lot 65 for valuable consideration and with no notice of Omohundro's prior deed. Omohundro relies upon his own testimony that he told Scott that he owned the house "over there and the lot next to it" and "asked [Scott] . . . if the lot was worth any more money than what I had paid for it. [Scott] said he hadn't priced them yet. That was it."

We note that no finding of notice or valuable consideration, as between Scott

---

4. *See id.*

5. *See id.*

6. *See id.*

7. *See id.*

8. *See id.*

9. *See id.*

10. *See id.*

11. *See id.*

12. *See id.* at 589–90.

13. *See United Sav. Ass'n of Tex. v. Villanueva,* 878 S.W.2d 619, 622 (Tex.App.—Corpus Christi 1994, no writ).

14. *See id.*

15. *See id.*

and Harrison Builders, is included in the trial court's findings of fact.[16] More importantly, such a determination would be of no legal relevance because Jackson claims title under Mercantile Bank as a "creditor," and the terms under which Scott acquired title from Harris Builders are therefore not at issue. The first issue on appeal is without merit.

## Mercantile Bank was a creditor, taking for value without notice

In his second issue on appeal, Omohundro claims that legally and factually insufficient evidence support the trial court's finding that Mercantile Bank received its deed of trust for valuable consideration and without notice.

Section 13.001(a) of the Texas Property Code, which addresses the validity of an unrecorded instrument, states that for instruments recorded before September 1, 1989, "[a] conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law." [17]

16. The trial court's findings of fact are as follows:

1. Omohundro received a Warranty Deed to Lot 65 from Harrison Builders, Inc. dated June 20, 1974, but failed to file it until January 14, 1977 in Volume 1370, Page 242 of the Deed Records of Grayson County, Texas.

2. Omohundro provided no notice to Mercantile National Bank of his claim to Lot 65, and admitted that the bank probably did not know about his claim when they accepted Lot 65 from Harold Scott on December 28, 1976.

3. Mercantile National Bank did not have actual notice of Read Omohundro's deed or claim to ownership.

4. Harold Scott pledged Lot 65 in exchange for a purchase money mortgage, not part of an antecedent debt, to Mercantile National Bank on December 28, 1976. The deed was filed December 29, 1976.

5. Mercantile National Bank of Dallas paid valuable consideration for Harold Scott's purchase money mortgage in the form of a purchase money loan for $800,000.

6. Lot 65, when pledged to Mercantile National Bank of Dallas, was not part of an antecedent debt between creditor and debtor.

7. Plaintiff followed in chain of title from Mercantile National Bank of Dallas.

8. Plaintiff received a special Warranty Deed from Bank One Texas on Lot 65 dated April 7, 1992 and immediately filed it at Volume 2205, Page 738 of the Real Property Records of Grayson County, Texas.

9. Because the parties stipulated to a common source of ownership there was no need to file headright certificate, land scrip, or other ownership evidence. Both parties claim ownership on chains of title through Harrison Builders, Inc. Both parties provided each other with their respective deed instruments and/or citations through which they claim ownership.

10. Plaintiff provided sufficient evidence of his superior title to Lot 65.

The trial court's conclusions of law stated:

1. Texas Property Code § 13.001 states that,

'A conveyance of real property or an interest in real property or a mortgage or deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law.'

2. Mercantile National Bank of Dallas was a 'Creditor' under the definition of § 13.001.

3. Mercantile National Bank's December 29, 1976 filed Deed of Trust was superior to Omohundro's January 14, 1977 filed Warranty Deed.

4. Without notice, Mercantile Bank obtained a superior right to the unrecorded Deed of Omohundro.

5. Any subsequent purchasers in Mercantile Bank's subsequent chain of title obtain superior title to Lot 65 as well.

6. Once Mercantile Bank obtained a superior right to Lot 65, all those following Mercantile Bank in its chain of title obtain the same superior right, with or without notice.

7. Jackson, claiming under Mercantile Bank's chain of title, possesses superior title to Omohundro.

8. Jackson owns 100% fee simple, undivided interest in and to Lot 65.

17. See TEX.PROP.CODE ANN. § 13.001(a) (Vernon 1984 & Supp.2001).

Although the statute by its terms renders void the unrecorded deed as against "creditors," courts interpret this to mean specifically creditors who have acquired liens without notice of the competing deed.[18] When these elements are met, the right of the creditor is perfect in law, and no considerations of equity or questions of estoppel enter into the case.[19] It is immaterial that the creditor may never have examined the debtor's record.[20] Further, a creditor's lien takes precedence over a prior unrecorded deed, unless the creditor has notice of the deed at or before the time his lien is fixed upon the land.[21] Once the creditor takes without notice, subsequent purchasers for value in that creditor's chain of title are protected, regardless of whether the subsequent purchaser knew of the claimant's adverse claim.[22] Thus, if Mercantile Bank was a "creditor" who took the deed of trust without notice of the unrecorded deed to Omohundro, then Jackson as successor to Mercantile Bank's title is protected.

Here, the record shows that Mercantile Bank accepted Scott's deed of trust as a purchase money creditor, a lien created by contract, and this deed of trust was not based on an antecedent debt.[23] Moreover, Omohundro testified that at the time Mercantile Bank accepted the Deed of Trust on December 28, 1976, Omohun-dro provided no notice to Mercantile Bank of Omohundro's unrecorded deed. Although an open, exclusive, and visible possession of the premises when the right of a creditor attaches is notice of the right under which it is held,[24] Omohundro had erected no structures or buildings on Lot 65 so as to provide any person, including Mercantile Bank, with visual evidence of his ownership of that land. The only visible manifestation of Omohundro's possession of Lot 65 was a garden. We conclude there is legally and factually sufficient evidence supporting the trial court's finding that Mercantile Bank had no notice of Omohundro's prior, unrecorded deed. Omohundro's second issue on appeal is overruled.

Finally, in his third omnibus issue on appeal, Omohundro urges that he is entitled to title and possession through his prior deed, as Jackson has failed to show a superior right to title and possession. Having established that Mercantile Bank was his predecessor in title, and that it was a creditor who took without notice, Jackson has shown that he has superior title over that of Omohundro pursuant to TEX.PROP.CODE ANN. § 13.001. The record supports the trial court's findings of fact stating as much. The evidence in the entire record is not so contrary to the overwhelming weight and preponderance of the

---

18. See Gibralter Sav. Ass'n v. Martin, 784 S.W.2d 555, 557 (Tex.App.—Amarillo 1990, writ denied) (emphasizing language in Paris Grocer Co. v. Burks, 101 Tex. 106, 105 S.W. 174, 175 (1907), that right of creditor is purely statutory and requires nothing but concurrence of conditions required by statute to make it complete).

19. See id.

20. See id.

21. See Eagle Lumber Co. v. Trainham, 365 S.W.2d 702, 704 (Tex.Civ.App.—San Antonio 1963, writ ref'd n.r.e.) (applying rule to judgment creditor); see also 64 TEX.JUR. 3d Records and Recording Laws §§ 126, 128 (1989) (stating that all creditors, of whatever character, who have, without notice, acquired lien on property that is subject of unrecorded instrument take free of that instrument, and mortgage or deed of trust is superior to prior unrecorded deeds affecting property of which holder has no notice).

22. See Long v. Shelton, 155 S.W. 945, 946 (Tex.Civ.App.—Texarkana 1913, writ ref'd) (providing protection to subsequent purchaser of land conveyed by will).

23. See Turner v. Cochran, 94 Tex. 480, 61 S.W. 923 (1901) (involving mortgagee who accepted pledge on antecedent debt, meaning that when debt was created, land was not specifically pledged as collateral).

24. See Texas Amer. Bank/Levelland v. Resendez, 706 S.W.2d 343, 347 (Tex.App.—Amarillo 1986, no writ) (citing Paris Grocer, 105 S.W. at 175).

evidence that it is clearly wrong and manifestly unjust, and there is more than a scintilla of evidence to support the trial court's findings. Omohundro's third issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.