

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00482-CV

**CRVI RIVERWALK HOSPITALITY, LLC**,
Appellant

v.

**425 SOLEDAD, LTD.** and 425 Loneliness, Ltd.,
Appellees

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-CI-20826
Honorable Mary Lou Alvarez, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: August 10, 2022

AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REVERSED AND
REMANDED IN PART

Appellant CRVI Riverwalk Hospitality, LLC appeals the trial court's judgment declaring

a parking agreement valid and enforceable against it. On appeal, CRVI Riverwalk asserts several

points of error as to the trial court's legal conclusions and the sufficiency of the evidence. It argues:

(1) the agreement did not create an easement appurtenant; (2) its title is protected by the shelter

rule; (3) it is a subsequent bona fide purchaser without notice under Texas Property Code § 13.001;

(4) the agreement is unenforceable under the rule against perpetuities; (5) the trial court improperly

assumed agency and imputed knowledge across distinct entities; (6) there was no estoppel by

contract; and (7) Appellee 425 Loneliness, Ltd. was not entitled to attorney's fees. Because we conclude the shelter rule applies, we reverse the trial court's judgment for 425 Loneliness on its declaratory judgment claim and render judgment declaring the Parking Agreement void as to CRVI Riverwalk. We further reverse the trial court's judgment for 425 Loneliness on attorney's fees and remand the case to the trial court to reconsider what award of attorney's fees, if any, are appropriate.

## BACKGROUND

This dispute concerns an office building, a parking garage, and a hotel found along two blocks of Soledad Street in downtown San Antonio, Bexar County, Texas. The three buildings are connected by two tunnels: one that runs from the parking garage to the office building, and one that runs from the office building to the hotel.

In 2005, MSPA Acquisition II, L.P.—then-owner of all three buildings—sold the office building at 425 Soledad Street to an entity named 425 Soledad, Ltd. As part of the sale, MSPA and 425 Soledad entered into the Parking Agreement to make parking spaces in the parking garage accessible to 425 Soledad's employees and tenants. The Parking Agreement was not recorded with the Bexar County Clerk.

### A. The Hotel and Parking Garage

In 2006, HEI San Antonio Hotel LP ("HEI") purchased the hotel and parking garage from MSPA, financed by a loan from Merrill Lynch Mortgage Lending, Inc. ("MLML") as evidenced by two promissory notes, an "A-Note" and a "B-Note." In 2008, Cypress Real Estate Advisors, Inc. purchased only the B-Note through a special purpose entity named CRVI Crowne Plaza, L.P.[1]

---

[1] MLML assigned Note B to an affiliate, MLML Subdebt Holding LLC, before CRVI Crowne Plaza, L.P. purchased it.

HEI defaulted on its Note payments in July 2012. As a result, Cypress worked with MLML and the servicer on the A- and B-notes to put the hotel and parking garage into receivership in August 2012. In 2013, the receiver and CRVI Riverwalk executed the Receiver-CRVI Riverwalk Purchase and Sale Agreement, and the receiver further executed and delivered to CRVI Riverwalk a special warranty deed transferring title of the hotel and parking garage to CRVI Riverwalk.

### B. The Office Building

Shortly after acquiring the office building in 2005, 425 Soledad divided the offices into eight condominium units. In 2016 Weston Urban, LLC acquired Unit 1 through a special purpose entity, 425 Loneliness, Ltd. When 425 Loneliness acquired Unit 1 in 2016, it reached out to CRVI Riverwalk and requested an allocation of parking spaces granted by the Parking Agreement. CRVI Riverwalk refused to recognize 425 Loneliness's rights to parking spaces under the Parking Agreement, taking the position the Parking Agreement was unenforceable.[2]

### C. The Lawsuit

In October 2017, 425 Soledad filed suit against CRVI Riverwalk, and in August 2018, its petition was amended to include 425 Loneliness as a plaintiff (collectively, the "425 entities"). The 425 entities sought, among other things, a declaratory judgment CRVI was bound by the Parking Agreement and the agreement "shall run with the land" and bound successor-in-interest. CRVI Riverwalk filed a counterclaim against the 425 entities, seeking, among other things, a declaratory judgment stating the Parking Agreement did not bind it, CRVI Riverwalk did not have notice of the Parking Agreement, and it was a bona fide purchaser of the hotel and parking garage.

By the time of trial, 425 Loneliness was the sole plaintiff because it had purchased all condo units from 425 Soledad, and the trial court dismissed 425 Soledad's claims for lack of

---

[2] Weston Urban subsequently acquired 425 Soledad and Units 2 through 5, also through 425 Loneliness.

standing. After a bench trial, the trial court rendered judgment for 425 Loneliness, granting its declaratory judgment claim, denying CRVI Riverwalk's declaratory judgment claim, and granting 425 Loneliness attorney's fees and conditional appellate attorney's fees.

This appeal followed.

## STANDARD OF REVIEW

"Where, as here, the trial court issues findings of fact and conclusions of law, we review its factual findings for sufficiency of the evidence and its legal conclusions de novo." *In re T.D.L.*, 621 S.W.3d 346, 350 (Tex. App.—San Antonio 2021, no pet.). We may only reverse based on an error of law if the error of law probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting their case to this court. *See* TEX. R. APP. P. 44.1(a).

## THE PARKING AGREEMENT GRANTED AN EASEMENT APPURTENANT

CRVI Riverwalk argues the Parking Agreement created a license, and the trial court erred when it concluded the Parking Agreement created an easement appurtenant for parking for the Office Tract. The court's conclusions of law provide, in pertinent part:

1. The plain language of the Parking Agreement demonstrates a clear intent to bind not only 425 Soledad and MSPA, but also their successors and assigns in title. Paragraph 14 of the Parking Agreement states that the terms and conditions of the Parking Agreement shall "inure to the benefit of, and be binding upon [425 Loneliness] and MSPA and their respective successors and assigns in title." The same paragraph also states that the terms and provisions of the Parking Agreement "shall run with the land." Paragraph 9 also expressly contemplates that the terms of the agreement will be binding on MSPA's successors in title, laying out the circumstances in which a successor owner of the Garage will have a right to terminate the Parking Agreement. The Parking Agreement thus creates rights that are not personal in nature, but instead endure from owner to owner thereby creating a real property interest in the Garage. Indeed, the Parking Agreement creates an easement appurtenant to the Office Building that gives the owner of the Office Building the right to use the Garage for a specific purpose: parking for the occupants of the Office Building. (alteration in original and citations omitted).

- 4 -

Based on this conclusion, the trial court entered judgment for 425 Loneliness on its declaratory judgment claim, declaring the Parking Agreement valid and enforceable by 425 Loneliness against CRVI Riverwalk.

## A. The Law

When construing the terms of an agreement, our primary concern is ascertaining the true intent of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). "We examine the writing as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *7979 Airport Garage, L.L.C. v. Dollar Rent A Car Sys., Inc.*, 245 S.W.3d 488, 500 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); *see Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "We give terms their plain, ordinary, and generally accepted meaning unless the contract shows the parties used them in a technical or different sense." *7979 Airport Garage*, 245 S.W.3d at 500. If the terms can be given a definite or certain meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law. *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 686 (Tex. 2020). A dispute over the meaning of the terms is not enough to render an agreement ambiguous. *Id.* In addition, the court may consider the circumstances surrounding its execution to aid in construing it. *Minihan v. O'Neill*, No. 04-18-00847-CV, 2020 WL 444381, at *3 (Tex. App.—San Antonio Jan. 29, 2020, no pet.) (mem. op.). However, if the agreement is unambiguous, a court may not "delv[e] into the parties' intent beyond what their agreement plainly yields." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 484 (Tex. 2019). An agreement is ambiguous only if it is susceptible to two different, reasonable meanings. *Coker*, 650 S.W.2d at 393.

Because we must determine whether the Parking Agreement provides an easement, we must also identify the difference between a license and an easement. "A license is a privilege or

authority given to one or retained by one to do some act or acts on the land of another, but which does not amount to an interest in the land itself." *Minihan*, 2020 WL 444381, at \*3. A license in real property grants no interest in the land. *See Joseph v. Sheriffs' Ass'n*, 430 S.W.2d 700, 703 (Tex. Civ. App. 1968, no writ). Instead, it is "a personal, revocable, and unassignable privilege, conferred either by writing or parol, to do one or more acts on land without possessing any interest therein." *Id.* (internal quotation marks omitted).

By contrast, an easement is a nonpossessory interest in property that authorizes its holder to use the property for only a particular purpose. *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (citing RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES) § 1.2 cmt. d.)). "An easement appurtenant is one that attaches to the land and passes with it." *Minihan*, 2020 WL 444381, at \*3; *see Killam Ranch Props., Ltd. v. Webb Cty.*, 376 S.W.3d 146, 155–56 (Tex. App.— San Antonio 2012, pet. denied). "It requires a dominant estate, to which the easement is attached, and a servient estate, which is subject to the use of the dominant estate to the extent of the easement granted or reserved." *Minihan*, 2020 WL 444381, at \*3 (internal quotation marks omitted). "Because the easement holder is the dominant estate owner and the land burdened by the easement is the servient estate, the property owner [of the servient estate] may not interfere with the easement holder's right to use the servient estate for the purposes of the easement." *Severance v. Patterson*, 370 S.W.3d 705, 721 (Tex. 2012).

An easement may be created expressly. *Thompson v. Clayton*, 346 S.W.3d 650, 654 (Tex. App.—El Paso 2009, no pet.). "An express easement is an interest in land to which the Statute of Frauds applies." *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 803 (Tex. App.—San Antonio 2014, pet. denied). "If an easement does not sufficiently describe the interest conveyed, the conveyance is void." *Id.* (internal quotation marks omitted). "To be sufficient, the writing must furnish within itself, or by reference to some other

existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty." *Id.* (internal quotation marks omitted).

"Even if an easement is uncertain, however, a court is not authorized to completely ignore the right granted, if the easement is susceptible to a reasonable construction as to its true intent and meaning." *Id.* (internal quotation marks omitted); *see Marcus Cable*, 90 S.W.3d at 702 ("[W]e may not circumvent the contracting parties' intent by disregarding the easement's express terms and the specific purpose for which it was granted."). "If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds." *Nguyen v. Yovan*, 317 S.W.3d 261, 267 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). "It is not necessary to use the term 'easement,' or any other particular words, to create an express easement." *Minihan*, 2020 WL 444381, at *3. Generally, any language that clearly shows an intention to grant an easement is sufficient for the purpose. *Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.). Although easements are not revocable at will, easements do not necessarily run in perpetuity. *Id.* at 712. "A determinable easement may be created that will terminate on the happening of a particular event." *Id.*

### B. Analysis

CRVI Riverwalk argues the Parking Agreement could not have created an easement because the parties understood the agreement was not an easement, but a personal covenant. Although the Parking Agreement does not use the term "easement," it contains the elements necessary to create an express easement appurtenant satisfying the statute of frauds. It identifies a dominant estate—the Office Tract identified in Exhibit B—and a servient estate—the Garage Tract identified in Exhibit A. It identifies the location of the easement—150 spaces on the fourth floor of the parking garage. It identifies the purpose of the easement as "parking non-commercial vehicles in connection with use of the Office Tract." Finally, it states the essential terms, including

the consideration of $10, commenced on June 27, 2005, and was to continue unless MSPA desired to use the parking garage as something other than a parking garage—making the easement determinable. The parties' intent to create an easement is shown by the provision in the agreement stating it "shall run with the land and inure to the benefit of" the parties to the agreement and "their respective successors and assigns in title." In other words, the agreement does not simply permit the current owner—CRVI Riverwalk—to do some act or acts on the lot. It expressly grants current and future owners of the office building the use of the parking garage for parking. The trial court therefore did not err by concluding the Parking Agreement created an easement appurtenant.

CRVI Riverwalk further argues the Parking Agreement could not have created an easement because it only granted authorized users the option of entering into monthly parking license agreements and permitted termination of the rights of authorized users. However, the issue before this court is whether the Parking Agreement created an express easement appurtenant for the benefit of 425 Loneliness—which owns the office building—to run with the land and bind successors in interest. We have determined that it does, and the rights of authorized users is not at issue. *See* TEX. R. APP. P. 47.1.

CRVI Riverwalk's first issue is overruled.

## THE SHELTER RULE

CRVI Riverwalk argues the shelter rule renders the Parking Agreement void as against it because CRVI Crowne acquired the B-Note, secured by a lien on the parking garage, without notice of the unrecorded Parking Agreement.

### A. The Law

#### 1. Bona Fide Purchasers Under the Recording Statute

Under section 13.001 of the Texas Property Code, "an interest in real property . . . is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice." TEX.

PROP. CODE § 13.001(a). A creditor under section 13.001(a) means a lien creditor. *See Omohundro v. Jackson*, 36 S.W.3d 677, 682 (Tex. App.—El Paso 2001, no pet.). The statute further provides that an "unrecorded instrument is binding . . . on a subsequent purchaser . . . who has notice of the instrument." *Id.* § 13.001(b). "A bona fide purchaser is one who acquire[s] property in good faith, for value, and without notice of any third-party claim or interest." *Broadway Nat'l Bank, Tr. of Mary Frances Evers Tr. v. Yates Energy Corp.*, 631 S.W.3d 16, 26 (Tex. 2021) (alteration in original).

### 2. Notice

Under section 13.001 of the Texas Property Code, "Notice may be constructive or actual." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001). "Actual notice rests on personal information or knowledge." *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001) (citing *Flack v. First Nat. Bank of Dalhart*, 226 S.W.2d 628, 631 (Tex. 1950)). It "embraces knowledge of all those facts which reasonable inquiry would have disclosed, the duty of inquiry extending only to matters that are fairly suggested by the facts really known." *Whoa USA, Inc. v. Regan Props., LLC*, No. 05-13-01412-CV, 2014 WL 6967852, at *7 (Tex. App.—Houston [14th Dist.] Nov. 26, 2014, no pet.) (mem. op.) (quoting *Flack*, 226 S.W.2d at 631) (internal quotation marks omitted). "[I]f [a subsequent purchaser of property] had knowledge of any fact or circumstance sufficient to put a prudent man upon inquiry which, if prosecuted with ordinary diligence, would lead to actual notice of [the adverse claim], [the subsequent purchaser] [is] charged with such knowledge." *Id.* (alterations in original and internal quotation marks omitted). "In other words, whatever fairly puts a person upon inquiry is actual notice of the facts which would have been discovered by reasonable use of the means at hand." *Flack*, 226 S.W.2d at 631–32.

### 3. The Shelter Rule

The shelter rule provides that once a purchaser takes title to land without notice of an adverse party's claim to the land, subsequent purchasers for value in the chain of title are protected, regardless of their knowledge of a claim by an adverse party. *Omohundro*, 36 S.W.3d at 682; *see, e.g.*, *Gainesville Oil & Gas Co. v. Farm Credit Bank of Tex.*, 847 S.W.2d 655, 657-58 (Tex. App.—Texarkana 1993, no pet.); *see also* 64 Tex. Jur. 3d Records and Recording Laws § 119 ("Furthermore, a creditor's lien takes precedence over a prior unrecorded deed unless the creditor has notice of the deed at or before the time his or her lien is fixed upon the land and once the creditor takes without notice, subsequent purchasers for value in that creditor's chain of title are protected regardless of whether the subsequent purchaser knew of the claimant's adverse claim."). *See generally Moran v. Adler*, 570 S.W.2d 883, 885 (Tex. 1978) (citing cases).

### B. Analysis

CRVI Riverwalk argues the trial court erroneously imputed MLML's knowledge of the Parking Agreement to CRVI Crowne without considering whether CRVI Crowne was a bona fide mortgagee without actual notice. CRVI Riverwalk further argues if CRVI Crowne was a bona fide mortgagee without actual notice, CRVI Riverwalk would take title out of the receivership under the shelter rule and the Parking Agreement would be void as to its interest in the parking garage. The court's conclusions of law provide, in pertinent part:

> 2. When MLML extended the A/B Notes to HEI for purchase of the Hotel and Garage, MLML's deed of trust was subject to the rights granted under the Parking Agreement because MLML had actual knowledge of the Parking Agreement. Because it had actual knowledge of the Parking Agreement, MLML was not a bona fide mortgagee with respect to the Parking Agreement.
>
> 3. When Cypress acquired the B Note from MLML via the special purpose entity CRVI Crowne, CRVI Crowne stepped into the shoes of MLML in all respects, and thereby became burdened by MLML's knowledge of the Parking Agreement. Because MLML was not a bona fide mortgagee, CRVI Crowne was not a bona fide mortgagee with respect to the Parking Agreement.

4. MLML's knowledge of the Parking Agreement was imputed to CRVI Crowne through the Assignment and Assumption Agreement by which CRVI Crowne acquired the B Note. Because CRVI Crowne is merely a special purpose entity owned and controlled by Cypress, has no employees, and can act only through Cypress principals and/or employees, CRVI Crowne's knowledge of the Parking Agreement is held by the principals, employees and agents of Cypress.

5. When Cypress acquired the Hotel and Garage from the Receiver in 2013 through its special purpose entity CRVI Riverwalk, the principals, agents, and employees of Cypress who facilitated that transaction were aware of the Parking Agreement by virtue of CRVI Crowne's imputed knowledge from MLML. This knowledge of the Parking Agreement did not vanish because Cypress decided to take title via CRVI Riverwalk, which is charged with knowledge of the Parking Agreement. CRVI Riverwalk is therefore not a bona fide purchaser, and CRVI Riverwalk's title to the Garage is subject to the Parking Agreement.

6. Because neither MLML nor CRVI Crowne are bona fide mortgagees, and because HEI is not a bona fide purchaser, CRVI Riverwalk did not take title free of the Parking Agreement under the Shelter Rule.

Based on these conclusions, the trial court entered judgment for 425 Loneliness and declared the Parking Agreement valid and enforceable by 425 Loneliness against CRVI.

However, the trial court's legal conclusions as to actual notice are erroneous because they are contrary to *Madison v. Gordon* and *Flack v. First National Bank of Dalhart*. Under *Madison* and *Flack*, actual notice and knowledge of all those facts, which reasonable inquiry would have disclosed, must be proven as to each party. *See Madison*, 39 S.W.3d at 606 ("Actual notice rests on personal information or knowledge."); *Flack*, 226 S.W.2d at 631 ("Actual notice literally means express or positive personal information or knowledge directly communicated to the person to be affected. In a more comprehensive sense, the term also embraces knowledge of all those facts which reasonable inquiry would have disclosed, the duty of inquiry extending only to matters that are fairly suggested by the facts really known." (internal quotation marks omitted)). If a purchaser lacks notice, subsequent purchasers would be entitled to take title under the shelter rule. *See Omohundro*, 36 S.W.3d at 682.

We must therefore determine whether CRVI Crowne had actual notice because, if it did not, then a subsequent purchaser like CRVI Riverwalk would be entitled to protection under the shelter rule. In making this determination, we remain mindful that we will not reverse this error of law unless it resulted in an improper judgment. *See* TEX. R. APP. P. 44.1(a). To determine whether the trial court's error was harmful, we review the entire record and require CRVI to demonstrate the trial court's judgment turns on its imputation of MLML's knowledge of the Parking Agreement to CRVI Crowne. *See Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 883 (Tex. 2014).

CRVI Crowne Plaza purchased the B Note from MLML in June 2008. Gregory Gitcho—a former employee of Cypress Real Estate Advisors—testified he was the primary person responsible for conducting due diligence on the B Note. He further testified he never learned about the Parking Agreement and never learned anything that might require him to conduct further inquiry into whether such an agreement existed. During the due diligence process, MLML did not provide him with any copies of the Parking Agreement or monthly parking agreements. Gitcho also testified he observed parking revenue in the financials, but thought it was negligible compared to the rest of hotel revenue. He further testified the Parking Agreement was not mentioned in the 2006 appraisal secured by MLML in connection with the loan to HEI. Gitcho did not contact HEI about any of the events surrounding the 2006 closing on the loan with MLML. Gitcho testified Cypress did have access to the management company operating the hotel, which was an HEI affiliate, but it did not have any discussions with them about any parking contracts. Gitcho conceded he never asked for contracts associated with hotel operations because CRVI Crowne was simply purchasing a financial instrument. He also visited the property and walked the tunnels, but never walked into the parking garage.

After reviewing the entire record, particularly in light of Gitcho's testimony, we conclude CRVI Crowne purchased the B Note without notice of the Parking Agreement. *See Noble Mortg.*

*& Invs., LLC v. D & M Vision Invs., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (concluding under section 13.001, lender can be bona fide mortgagee, if lender takes lien in good faith, for valuable consideration, and without actual or constructive notice of outstanding claims (citing *Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 769 (Tex. 1983))); *see also* 64 TEX. JUR. 3d RECORDS AND RECORDING LAWS § 123 ("A mortgage or deed of trust, or a vendor's lien, is superior to prior unrecorded deeds, mortgages, liens, or other instruments affecting the property of which the holder has no notice. . . . Also, an assignee of a mortgage is entitled to the protection of the recording acts. . . . The holder of a junior mortgage given to secure an antecedent debt, and who cannot be protected as a purchaser, is to be regarded as a lien creditor, and protected as such, even though he or she has parted with no consideration on the faith of the security." (footnote omitted)).

Because CRVI Riverwalk took title to the parking garage (and hotel) via a chain of title that included CRVI Crowne who took the B Note without notice of the unrecorded Parking Agreement, CRVI Riverwalk is protected by the shelter rule, and the Parking Agreement is void as to CRVI Riverwalk. *See* TEX. PROP. CODE § 13.001(a); *Moran v. Adler*, 570 S.W.2d at 885; *Omohundro*, 36 S.W.3d at 682; *Gainesville Oil & Gas*, 847 S.W.2d at 657-58; *see also* 64 TEX. JUR. 3d RECORDS AND RECORDING LAWS § 119. Because the Parking Agreement is void as to CRVI Riverwalk's title to the parking garage, the trial court's legal error caused the rendition of an improper judgment.

Given our disposition, we need not consider CRVI Riverwalk's other points of error because they are alternative bases to overrule the trial court's judgment. *See* TEX. R. APP. P. 47.1; *Klein Indep. Sch. Dist. v. Northwood Lighting Corp.*, No. 14-19-00688-CV, 2021 WL 4736469, at *2 (Tex. App.—Houston [14th Dist.] Oct. 12, 2021, no pet.) (mem. op.) ("Because the first issue is dispositive, we need not address the remaining issues raised on appeal.").

**ATTORNEY'S FEES**

CRVI Riverwalk also challenges the trial court's award of attorney's fees. In its judgment the trial court awarded judgment for 425 Loneliness on its declaratory judgment claim and declared the Parking Agreement valid and enforceable by 425 Loneliness against CRVI Riverwalk. It further ordered an award of attorney's fees to 425 Loneliness in the amount of $364,296.96 and other conditional awards of appellate attorney's fees. Because we reverse the trial court's judgment and render judgment for CRVI Riverwalk, we also reverse the trial court's judgment awarding attorney's fees to 425 Loneliness and remand the case for further proceedings to permit the parties to address on remand whether attorney's fees, if any, are appropriate. *See O.C.T.G., L.L.P. v. Laguna Tubular Prods. Corp.*, 557 S.W.3d 175, 193 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd by agr.) (when award of attorney's fees is based on success on claim and judgment is reversed as to that claim and case remanded, proper disposition is to reverse and remand award of attorney's fees); *see also Weltch v. Est. of Weltch*, No. 14-20-00113-CV, 2021 WL 6141184, at *10 (Tex. App.—Houston [14th Dist.] Dec. 30, 2021, no pet.) (mem. op.); *Hausser v. Cuellar*, 345 S.W.3d 462, 471 (Tex. App.—San Antonio 2011, pet. denied).

**CONCLUSION**

We reverse the trial court's judgment for 425 Loneliness on its declaratory judgment claim, ordering CRVI Riverwalk take nothing on its declaratory judgment claim, and ordering CRVI Riverwalk to comply with the terms of the Parking Agreement.

We render judgment for CRVI Riverwalk on its declaratory judgment claim and declare the Parking Agreement void as to CRVI Riverwalk.

We further reverse the trial court's judgment for 425 Loneliness in the amount of $364,296.96 in attorney's fees and other conditional awards of appellate attorney's fees and remand the case to the trial court to reconsider what award of attorney's fees and conditional

appellate attorney's fees, if any, are appropriate. The final judgment of the trial court is otherwise affirmed.

Luz Elena D. Chapa, Justice